BAKER OIL TOOLS, INC.,

*Plaintiff and Respondent,*

vs.

L. S. CHISM,

*Defendant and Appellant.*

(No. 2564; December 16th, 1952; 251 Pac. (2d) 569)

For the plaintiff and respondent the cause was submitted upon the brief of Raymond, Guthrie and Raymond, of Newcastle, Wyoming, and also oral argument of Mr. Rodney M. Guthrie.

For the defendant and appellant the cause was submitted upon the brief and also oral argument of Chester S. Jones and Richard S. Dumbrill, of Jones and Dumbrill, of Newcastle, Wyoming.

OPINION

ILSLEY, Justice.

The Baker Oil Tools, Inc., the plaintiff and respondent, brought this action against L. S. Chism, the defendant and appellant, in the district court for Weston County to recover the sum of $330.09, "for certain services, parts and materials," furnished the defendant at his special instance and request. A correct itemized account of the same was attached to the petition as an exhibit.

To the above allegations of the petition of the plaintiff, the defendant entered his general denial by way of answer. Defendant sets forth three specifications of error. First, that at the conclusion of plaintiff's case the district court erred in denying defendant's motion for judgment, for the reason that plaintiff, "had not proved a specific contract as alleged"; Second, that the judgment is contrary to law; Third, that the judgment entered is contrary to and is not sustained by the evidence. A judgment was rendered for the full amount in favor of the plaintiff and the defendant appeals. The question presented is whether or not the plaintiff, as an undisclosed principal, can, under the facts as presented to the trial court in this case, recover for services and the materials furnished.

The facts as shown by the record demonstrate that the defendant, in August, 1950, was in the oil production business and was having trouble with a well he was drilling on Fiddler Creek. He decided to acidize

the well and called by telephone a firm at Casper, Wyoming, known as International Cementers and asked them to put "mud acid" into the well, the purpose of which was to treat the well "with the idea of eating the cement that might be punched into the sand." On about August 29th someone came over from Casper with the necessary equipment and proceeded to give the well a treatment. Defendant states that he thought that International Cementers was doing the job. He received a bill from that firm for the service performed and refused to pay the same. The plaintiff herein actually did the work and furnished the materials for the well and the record shows that International Cementers was an agent for the plaintiff herein. The plaintiff, as the principal, did the work and the International Cementers was to receive a commission for its services.

The defendant received the bills for the service from the plaintiff. The work was done and the materials furnished by the Plaintiff. Defendant was present when a portion of the work was being done and knew that *someone* did the work and furnished the materials. Defendant states, however, he had nothing whatever to do with hiring the plaintiff and that he therefore refuses to pay plaintiff. Defendant has not paid anyone, claiming that tools were left in the well causing him considerable expense in "drilling it up." (Supposedly the tools.) No attempt was made to have the International Cementers made a party to this suit. No counterclaim was filed by the defendant. Mr. Farlee testified that he represented International Cementers in August, 1950, and received the telephone order from defendant for the service; that his firm furnished 500 gallons of acid and plaintiff furnished other materials, tools and service.

Defendant does not deny that he ordered the services and materials or that they were delivered and accepted. Neither does the defendant say that the price was unreasonable. Defendant states he has paid no one for the service and material.

Defendant does not claim that he was defrauded. He just says that he did not hire plaintiff and therefore refuses to pay for the service; that if he owes anyone he owes International Cementers.

Generally speaking, the law is well settled that an undisclosed principal can sue as well as be sued. As stated in 3 C.J.S. 209 Sec. 276 (a), "Subject to certain exceptions, a third person is liable to an undisclosed principal on a contract made in his behalf by his agent." There are no exceptions in the instant case. Defendant knew, or should have known, that after he called International Cementers and workmen appeared at his well with tools to do an acidizing job he was getting the service he ordered. When he received bills or accounts for services rendered from Baker Oil Tools, Inc., for work done on his well the defendant must have received some inkling that the plaintiff herein was the principal. He was served with the petition attached to which was an exhibit showing an itemized account of materials and services furnished defendant at Well No. 2, Fiddler Creek Field, Upton, Wyoming. This must have been notice to him that the plaintiff was a real party in interest. We find in 2 Am. Jur. 321 Sec. 410 that: "It is well recognized as a general rule that where a sale is made by an agent in his own name, without the disclosure of his principal, the latter may sue in his own name to collect the purchase price." See also Restatement of the Law-Agency—Sec. 321—Principal Partially Disclosed; and Sec. 322, Principal Undisclosed; Mechem on Agency (2d Ed.) p. 1626 Sec. 2059. In the case of Metropolis Woolen Co.,

Plaintiff, vs. Carity, Defendant, 173 N. Y. Supp. 57, where plaintiff sued for damages for nondelivery of goods and the suit was dismissed because it was shown at the trial that one Damast, plaintiff's agent, bought the goods without disclosing his agency and the defendant dealt with him as a principal. The court in reversing the case said:

"If the dismissal was predicated upon the notion that a principal should allege that he made the contract through an agent, it was obvious error. If the dismissal was upon the ground that, because Damast did not disclose his agency, the contract was not with the principal, the dismissal was wrong, as an undisclosed principal can sue as well as be sued."

There are many cases holding that an undisclosed principal may sue and be sued. The following are a few: First National Bank vs. Federal Reserve Bank 6 Fed. (2d) 339; Cowan v. Tremble 111 Cal. App. 458, 296 P. 91; Sigel-Compion Co. vs. Davis 69 Col. 511, 194 P. 468; Capitol Amusement Cao. vs. Gallagher 268 Mass. 321, 167 N.E. 674; American En. Brick Co. vs. Brozek 251 Mich. 7, 231 N.W. 45; Mercer vs. Germania Fire Ins. Co. 88 Ore. 410, 171 P. 412. See also 2 Am. Jur. 320.

As a Texas court has said: "Contracts made by an agent in his own name without disclosing that he has a principal in the transaction are not illegal; the undisclosed principal may sue thereon." Owen vs. King 111 S.W. (2d) 695, 114 A.L.R. 859-863.

Counsel complain that the pleadings of the plaintiff failed to give defendant notice of "any agent—undisclosed principal relationship," and that on the trial of the case it was not apparent that the plaintiff was an undisclosed principal. That prejudice resulted to the defendant as he was unable to "prepare or offer proof of the negligent performance of the work of

International Cementers upon his well." With this we cannot agree. As heretofore stated, we think the evidence and surrounding circumstances were such that the defendant must have known that someone was working on his well and when he received the summons and petition in this case he then knew, or should have known, who it was that negligently performed the work upon his well.

We do not assume to inform able counsel how to plead or try their case. However, we suggest that a counterclaim could have been filed; or the International Cementers could have been made a necessary party either plaintiff or defendant under sections 3-613, 3-614 W.C.S. 1945. Even at the trial if defendant was surprised he could have asked to amend his answer and for a continuance to bring forth proof to substantiate his claim of negligence.

With respect to the right of the defendant to avail himself of any defense he may have had against International Cementers in the suit brought by the plaintiff herein as an undisclosed principal we find the statement in 2 C.J. 877 Sec. 560, as follows:

"Where a third person who has entered into a contract with an agent in ignorance of the fact that he was not the real principal, as he assumed to be, if sued upon the contract by the principal, he may avail himself of every defense which existed in his favor against the agent at the time the principal first demanded fulfillment of the contract."

See also as to set off and counterclaim 2 C.J. 877 Sec. 561.

In the annotation found in 53 A.L.R. 415 where the right of a defendant in an action by an undisclosed principal to avail himself of defenses or setoffs that would have been available in an action by the agent in

his own right on the contract, the annotator, after an examination of many authorities, has this to say:

"The courts are almost unanimous in holding that, subject to certain limitations and exceptions hereinafter discussed, one who contracts with the agent of an undisclosed principal, supposing that the agent is the real party in interest, and not being chargeable with notice of the existence of the principal, is entitled, if sued by the principal on the contract, to set up any defenses and equities which he could have set up against the agent, had the latter been in reality the principal suing on his own behalf."

See also Marshall vs. Rugg 6 Wyo. 271 where this court examined the evidence and held it to be sufficient to support a verdict against the defendant as the *unnamed principal* for whom certain property was alleged to have been leased.

We conclude that under the rule announced that as between an agent and a principal, an undisclosed principal may sue; the authorities also hold that a third party may plead and present such defenses as he may have as against the undisclosed principal.

Finding no error in the record the judgment of the trial court is affirmed.

*Affirmed.*

BLUME, C. J. and R*iner*, J. concur.