Submitted on briefs September 23, affirmed November 12, 1953

## MILLER *v.* ZIEDRICH ET AL.

263 P. 2d 611

*Tracy H. Crum, Don R. Newbury* and *Gus Newbury,* of Medford, for appellant.

*Dement, Dunn & Meldrum,* of Myrtle Point, for respondents.

LUSK, J.

This is an appeal by the plaintiff from a judgment for defendants in an action to recover under a contract in writing to pay a real estate broker's commission.

Trial was before the court without a jury. The court entered findings of fact which in part are to the following effect: Plaintiff, Donald H. F. Miller, was a duly licensed real estate broker with an office and principal place of business at Medford, Oregon, and one L. E. Gilliam was a duly licensed real estate salesman under the plaintiff. On May 11, 1949, the defendants entered into a written contract with certain named persons doing business as Nelson Logging Company for the sale by the former to the latter of certain timber land in Douglas County, Oregon, for $61,000.00. A copy of this contract is referred to in the findings. On the same day Gilliam and the defendants executed the following agreement in writing:

"THIS AGREEMENT, made and entered into this 11th day of May, 1949, by and between L. E. Gilliam, First party, and William Ziedrich and *Marguerite H. Ziedrich,* husband and wife, and Harry Dement and *Grace K. Dement,* husband and wife, second parties.

## "WITNESSETH

"In consideration of the services of the first party in procuring the above contract, the second parties agree to pay to the first party the sum of Thirty-five Hundred ($3,500.00) Dollars. Said sum shall be paid in the following manner:

"Out of the payments received by the second parties under the above contract on timber lying on Section 18, Township 31 South, Range 4 West, Willamette Meridian (cruised at 6,000,000 feet), the second parties shall pay the sum of fifty cents per thousand feet.

"All payments received by the second parties on timber on Section 20, Township 31 South, Range 4 West, Willamette Meridian, shall be paid to the first party, until the aggregate payments for said timber equal Five Hundred ($500.00) Dollars. In any event the total consideration of Thirty-five Hundred ($3,500.00) Dollars shall be paid on or before November 11, 1950.

"IN WITNESS WHEREOF, the parties hereto have hereunto set their hands and seals the day and year first hereinabove written.

> "First Party:
> L. E. Gilliam            (SEAL)
>
> "Second Parties:
> William Ziedrich      (SEAL)
> Harry G. Dement      (SEAL)"

The court further found that the defendants did not employ the plaintiff as a real estate broker nor did they employ Gilliam as a real estate salesman to procure a purchaser of the real property described in the contract of sale, and that at no time was Gilliam a real estate broker.

Based on the foregoing, the court found as a conclusion of law that the writing executed by Gilliam and the defendants was void under the holding in *Hunter v. Cunning,* 176 Or 250, 154 P2d 562, 157 P2d 510. That case decides that a contract for the payment of a real estate brokerage commission, entered into with one who was not a duly licensed real estate broker at the time the cause of action arose, was void, and recovery on the contract was denied. The phrase, "at the time the alleged cause of action arose", was interpreted as meaning "at the time, or throughout the period, when the broker performed the services which culminated in the accrual of his cause of action." (176 Or 282)

The plaintiff in this case, who was concededly a duly licensed real estate broker during all the period of time material to the question involved, contends that the rule of *Hunter v. Cunning* does not apply because, while Gilliam was concededly not a broker but was a licensed real estate salesman, the brokerage contract upon which he sues was executed, as he claims, by Gilliam on the plaintiff's behalf as his agent, and that he may recover thereon as an undisclosed principal. The plaintiff alleged in his complaint, and introduced evidence to prove, that the defendants employed plaintiff as broker and Gilliam as salesman to procure a purchaser for the real property in question, and that Gilliam acted as plaintiff's agent in executing the writing by which the defendants agreed to pay Gilliam a commission. But the defendants contend that the plaintiff cannot recover as an undisclosed principal. They invoke the rule that "where a third person, who has entered into a contract with the agent in ignorance of the fact that he was not the real principal as he assumed to be, is sued upon the contract by the principal, he may avail himself, as against the principal, of every defense arising upon the terms of the contract itself, which existed in his favor against the agent at the time the principal first interposed and demanded performance to himself." 2 Mechem on Agency (2d ed) 1645, § 2074.

The business of real estate brokers and real estate salesmen is regulated by Title 59, OCLA. By § 59-102, OCLA, as amended by ch 286, Oregon Laws 1941, it is provided that the term "real estate broker" shall include any person who, "for another and for compensation or with the intention or in the expectation or upon the promise of receiving or collecting compensation", (inter alia) sells or negotiates the sale

of any real estate. Subdivision (4) of the same section, as amended, reads:

> "The term 'real estate salesman' shall mean and include any person, who, for compensation or in the expectation or upon the promise thereof, is employed or engaged by or becomes associated with a licensed real estate broker to do any act or acts or deals in any transaction or transactions set out in subsection 1 of this section for or on behalf of such licensed real estate broker."

Section 59-301 makes it unlawful to engage in the business of a real estate broker or a real estate salesman within this state without first obtaining a license as a real estate broker or a real estate salesman. In § 59-309 (4), as amended, it is provided:

> "Each real estate broker shall display prominently in his principal place of business his own license as well as the licenses of all real estate salesmen employed by him therein or in connection therewith. All licenses issued to real estate salesmen shall designate the employer of such salesmen by name."

Section 59-401, as amended by ch 429, Oregon Laws 1947 (being the act in effect at the time of the execution of the writing here sued upon) authorizes the real estate commissioner, who is charged with the administration of the statute, to suspend licenses of brokers and salesmen for performing certain acts therein specified. Among these is the following:

> "(f) Accepting a commission or valuable consideration as a real estate salesman for the performance of any of the acts specified in this act, from any person, except his employer, who must be a licensed real estate broker".

Section 59-312 provides:

> "No person, firm, partnership, copartnership, corporation or association engaged in the business

of, or acting in the capacity of, a real estate broker within this state shall bring or maintain any action in the courts for the collection of compensation without alleging and proving that such person, firm, partnership, copartnership, association or corporation was a duly licensed real estate broker at the time the alleged cause of action arose.''

Section 59-501, as amended by § 8, ch 429, Oregon Laws 1947, provides in part:

''No real estate salesman shall be employed by, or accept compensation from, any person other than the broker under whom he is licensed at the time.''

And § 59-502, as amended by § 9, ch 286, Oregon Laws 1941, provides penalties, including fine and imprisonment, for any violation of the act.

■ The effect of these statutes is that a licensed real estate salesman may lawfully engage in any of the activities permitted to a licensed real estate broker, but he may only do so as an employee of or one engaged by or on behalf of a broker, and he may not lawfully accept a commission from anyone except a broker, or be employed by anyone other than a broker under whom he is licensed at the time. Under *Hunter v. Cunning,* supra, a contract which contravenes any provision of the act is void. In other jurisdictions having statutes similar to ours it is held that a contract of a real estate salesman for the payment of a commission is illegal and unenforceable. *Byrne v. Peoples' Bond & Mortgage Co.,* 99 F Supp 195 (E. D. Pa.); *Walker v. Meyer,* 167 La 218, 119 So 26. This is clearly the law.

■ Now, the contract here is undoubtedly the contract of Gilliam, the salesman. ''In such a case the agent is the ostensible party to the contract; the other party may hold him liable upon it, although   \*   \*   \*

the principal may also usually be held liable when discovered; and, as such ostensible party, the agent may enforce the contract, subject in most cases * * * to a paramount right in the principal to enforce it himself if he so prefers." Mechem, op. cit., 1594, § 2025. See, also, 1 Williston on Contracts (Rev ed) 835, § 284.

■■ The general rule is that in the case of a contract entered into by an agent in his own name, but on behalf of an undisclosed principal, the principal may maintain an action on the contract and show that he is the real party in interest even though the contract is one which under the statute of frauds must be in writing. *Blomquist v. Jennings,* 119 Or 691, 696, 250 P 1101; *Riddle State Bank v. Link,* 78 Or 498, 501, 153 P 1192; *Flegel v. Dowling,* 54 Or 40, 47, 102 P 178, 135 Am St Rep 812; annotation, 138 ALR 333; 3 CJS 211, Agency § 276. But in an action by the principal upon such a contract the defendant may avail himself of every defense arising upon its terms which he could have interposed against the agent. 2 Am Jur 323, Agency § 414; 3 CJS 212, Agency § 276.

■■ Professor Mechem in his work from which we have already quoted says in § 2073:

"* * * But where the principal undertakes to enforce the contract he must, of course, take it as he finds it, and must be governed by its terms. He clearly cannot enforce rights under it which the contract did not give to the agent."

Here, the contract being void, it gave no rights to the salesman, and hence can give none to the broker, his principal.

The plaintiff relies on *Dabney v. Edwards,* 5 Cal 2d 1, 53 P2d 962, 103 ALR 822, and *Satisfaction Title & Investment Co. v. York,* 54 Colo 566, 131 P 444. The

former case, when carefully analyzed, will be found to be irrelevant to the present discussion. It was an action brought by a licensed real estate broker to recover a commission under an oral contract entered into by a salesman licensed under the broker to sell certain oil leases for the defendant. The principal question was whether the contract was within the statute of frauds. The decision turned on whether the oil leases were real or personal property. Some of them were held to be personal property, and as to these only the contract was declared valid. The court then considered the objection of the defendant that he did not know that the plaintiff was the principal of the salesman who made the contract, and disposed of the contention by saying "The right of an undisclosed principal to recover, however, is too well settled to be open to question", citing *Satisfaction Title & Investment Co. v. York,* supra. It is clear that the California Real Estate Brokers Law, which is like ours, did not apply to this phase of the case, which related only to personalty. The contract was a lawful one for the agent to make and could have been enforced by him, and the question presented here was in no way involved.

As to the Colorado case, which the California court cited as authority for its holding, it cannot be determined from the opionion whether the brokerage agreement there sued upon was entered into by an agent who was a licensed real estate salesman or not. For all that appears he might have been a licensed real estate broker. At any rate, the point made here was not discussed.

*Walker v. Meyer,* supra, cited by the defendants, holds that an agreement in writing to pay a commission to a licensed real estate salesman was unenforceable by a broker who was the salesman's employer and

principal. The court said that the defendant did not know the broker in the transaction and was not required to recognize or deal with him. It was contended by the broker that the salesman had transferred his right to the commissions to the broker, but the court held that since the salesman was forbidden by statute to collect a commission he had nothing to assign. This decision tends to support the defendant's position, though the precise question raised here was not passed on by the Louisiana court.

■ No case has come to our attention which deals squarely with the question for decision here, but the statute and the rules of law to which we have referred compel a holding that a contract to pay a broker's commission must be made in the name of the broker, not of a salesman, in order to be valid. This conclusion accords with the spirit of the Real Estate Broker's Act. A real estate salesman is licensed to engage in the real estate brokerage business only as an employee of a broker designated in the salesman's license. He has no legal authority to act in his own name, and is expressly forbidden on pain of possible fine and imprisonment to accept employment or compensation from any person other than the broker under whom he is licensed. If it is illegal for the salesman to accept compensation from anyone other than the broker it is equally illegal for him to contract for such compensation.

■ As stated, the Circuit Court found as a fact "that the defendants did not employ the plaintiff as a real estate broker." The plaintiff objected to this finding on the ground that "there is no substantial evidence to support this finding of fact", and requested the court to make certain findings of fact, among others, ":That

on or about October 1, 1948, the defendants employed the plaintiff as such real estate broker and the said L. E. Gilliam as such real estate salesman to procure a purchaser for real property", etc., and, further, that in signing the contract of purchase Gilliam was plaintiff's agent.

There is conflict in the evidence touching the questions raised by defendants' objection and requests for findings. The defendant Ziedrich, who handled the transaction for himself and his co-defedants, first got in touch with plaintiff by mail as the result of seeing plaintiff's "blind ad" in a Medford newspaper. Correspondence between them followed in which plaintiff referred to Gilliam as "my partner". The testimony of both the plaintiff and Gilliam was to the effect that they told Ziedrich that Gilliam was acting for plaintiff as a salesman. But Ziedrich denied this, swore that plaintiff told him over the phone that Gilliam was the field man "to look over the timber as either a cruiser or purchaser", and that Gilliam never mentioned any connection with the plaintiff. He further testified that Gilliam was a buyer and seller of timber on his own account and for his own credit.

The contract of sale and the brokerage contract were executed May 11, 1949. Ziedrich testified that in the fall of 1949 plaintiff called him on the phone and asked him if the timber had been sold, saying that he had a buyer. Ziedrich told him that the timber had been sold, and the plaintiff asked him who sold it. Ziedrich answered that Gilliam sold it, and the plaintiff "got so violent on the phone that he cursed and swore" because Gilliam had not notified him of the sale and was only acting as a salesman. "That is the first time", Ziedrich testified, "I heard he was a salesman."

Gilliam, on the other hand, testified that he showed Miller the contract with the commission agreement a day or two after it was signed.

The contract was drawn by Edward M. Murphy, a Roseburg attorney. Gilliam testified that Murphy was given no instructions as to the person to whom the commission was to be made payable in the brokerage agreement, but that Murphy knew that he was a salesman under the plaintiff. Murphy denied this, and testified that Gilliam did not inform him that he was acting for anyone but himself, that he had no knowledge of Miller, the plaintiff, that he drew the brokerage agreement in Gilliam's name at the latter's request, that Gilliam directed that the bill for Murphy's services be sent to him, that Murphy sent Gilliam five statements to his address in Ashland, and that Gilliam did not pay the bill but Ziedrich did.

From all this testimony, indicating not only that defendants did not know that Gilliam was a salesman acting for the plaintiff but also that Gilliam was not acting for him at all but for himself, the finding of ultimate fact that the defendants did not employ the plaintiff was justified. This finding was upon the critical issue in the case, for plaintiff alleged, and it was essential to his right of recovery for him to prove, that defendants employed him to perform the services in question. The action being one at law, this court is without authority to disturb the decision by the court below of a question of fact upon conflicting evidence.

It follows that the judgment should be and is affirmed.