SOUTHERN INDUSTRIES, INC., a corporation, and United States Fidelity and Guaranty Company, a corporation, Appellants,

, v.

UNITED STATES of America for the Use of JAMES BOND TRUCKING COMPANY, also known as James Bond Dump Truck Service, Appellees.

No. 18466.

United States Court of Appeals Ninth Circuit.

Jan. 6, 1964.

---

W. Francis Wilson, Lutich, Hall, D'Angelo & Wilson, and Richard A. Wilson, Phoenix, Ariz., for appellants.

Minne & Sorenson, Cavness, DeRose & Senner, and Jack Cavness, Phoenix, Ariz., for appellees.

Before MADDEN, Judge of the Court of Claims,* and HAMLEY and HAMLIN, Circuit Judges.

HAMLIN, Circuit Judge.

This is an appeal from a judgment of the United States District Court for the District of Arizona, sitting without a jury, in which plaintiff-appellee recovered amounts allegedly due under a payment bond executed according to section 1 of the Miller Act, 49 Stat. 793 (1935), 40 U.S.C. § 270a (1958). Jurisdiction of the district court was invoked under section 2(b) of that act, 49 Stat. 794 (1935), as amended, 40 U.S.C. § 270b(b) (Supp. IV, 1962). Jurisdiction of this court is based on 28 U.S.C. § 1291 (1958).

Appellant Southern Industries, Inc., is the prime contractor with the United

* Sitting by designation.

States Bureau of Public Roads to furnish all labor, equipment, and materials to construct a roadway known as Project Grand Canyon National Park 1–A14, B–9, East Rim Drive, Coconino County, Arizona. Southern Industries, as principal, and appellant United States Fidelity & Guaranty Co., as surety, executed a payment bond to the Bureau of Public Roads. On April 5, 1960, James Bond, president of the appellee corporation, entered into a written subcontract with Southern Industries whereby Bond was to truck certain materials for Southern Industries at stated unit prices. The trial court found that Bond was the "alter ego" of the appellee corporation. The court also found that certain oral modifications of the contract had been made at later dates, as follows: (1) On or about August 15, 1960, Southern Industries agreed to pay appellee $6.25 an hour "standby time" in addition to the unit price provided in the subcontract; Bond testified that this was because Southern Industries did not have the materials ready to haul. (2) On or about September 9, 1960, Southern Industries agreed to pay a "rental" of $12.-50 per hour for trucks with drivers furnished by appellee. (3) Certain "additional services," apparently the trucking of "hot mix," were performed by appellee over and above those required by the written subcontract. (4) All of the agreements entered into by appellee and Southern Industries were fully performed by appellee. (5) On or about September 17, 1960, appellee furnished 3,025 gallons of gasoline to Southern Industries.

The questions presented on this appeal are: (1) Whether appellee was a proper party plaintiff; (2) whether the oral modifications to the written subcontract were valid and enforceable; and (3) whether certain exhibits showing the amount of work performed were admissible under the business records exception.

Appellants contend and have strenuously contended throughout these proceedings that if Southern Industries entered into any subcontract, it was with James Bond as an individual, not the appellee corporation, and that therefore appellee was not a proper party plaintiff and the district court had no jurisdiction. They argue that the district court erred in its finding that Bond was appellee's "alter ego" on the ground that the theory of alter ego cannot be used to the advantage of a corporation but only to impose liability upon individual stockholders for corporate debts.[1] We do not propose to argue with this contention here, for it is unnecessary to use the alter ego theory to affirm this judgment. There is more than sufficient evidence in the record from which it can be concluded that Bond was acting as the agent of the appellee corporation, although that agency was not disclosed to Southern Industries at the time of entering into the contract. Bond testified that he was the sole owner of appellee corporation as well as its president, that he did business interchangeably both as the corporation and as James Bond Dump Truck Service, that no separate records were kept, and that he had a certificate of convenience and necessity to operate a dump truck business from the Arizona Corporation Commission in his own name, not that of the corporation.[2] The fact that appellee was

---

1. Appellants cite Application of Field, 190 F.2d 268, 271, 38 CCPA, Patents 1175 (1951). That was a case in which applicant sought to take advantage of a law which extended the protection of patents beyond the normal seventeen-year limit for those who had served in the armed forces during World War II. The Court of Customs and Patent Appeals, however, ruled that the fact that applicant had sold his patent rights to his own closely-held corporation defeated the right. The court

refused to "pierce the corporate veil" or use the alter ego theory to disturb this result. It is quite probable that to do so would have given applicant an undeserved windfall, for the corporation was capable of carrying on business in his absence. The statement taken from the case, however, that courts never disregard the corporate fiction for the benefit of the corporation is pure dictum.

2. Appellants make much of appellee's lack of a certificate of convenience and neces-

an undisclosed principal in this contract does not prevent it from bringing this suit, for it is settled law that an agent may act for an undisclosed principal and that the principal may sue third parties on contracts entered into for its benefit by the agent.[3] This is undoubtedly what the trial judge meant when he found Bond to be appellee's alter ego.[4]

■■ Appellants' second assignment of error is in the trial court's finding that certain oral modifications of the written contract were made. They maintain that Southern Industries' secretary-treasurer, Neil Kleck, had no authority to make such modifications. However, Kleck was the manager on the job for Southern Industries, and it would be impossible for this court to say, in light of the testimony and of the trial court's finding, that Bond was unreasonable in relying on Kleck's "apparent authority." The fact that appellants never objected to the modifications but accepted the services rendered until it came time to pay for them is action sufficient to generate a reasonable belief that Kleck had authority.[5] However, even if Kleck did not have authority (which we do not concede), such acceptance can be construed as an implied ratification of its agent's claimed unauthorized acts. Appellants also contend that Kleck never made the modifications at all but insisted that he must wait for home office approval. However, the court found to the contrary and there is ample evidence to sustain this finding.

■ Appellants' third contention is that Exhibits 10 and 11 were improperly admitted under 28 U.S.C. § 1732 (1958) to show truck time, and hence that no satisfactory showing of amount due was made. They argue that the reports made up by Bond's bookkeeper were not made in the regular course of business because they were based on time tickets and scale weight sheets furnished by unauthorized

---

sity. However, they have cited no Arizona case which would indicate that a contract entered into by a corporation without such a certificate is illegal, unenforceable, or even against the public policy of the state.

3. The classic exposition of this doctrine is Judge Cardozo's opinion in Kelly Asphalt Block Co. v. Barber Asphalt Paving Co., 211 N.Y. 68, 105 N.E. 88, L.R.A. 1915C, 256 (1914). It is further set forth in Queen Ins. Co. v. Citro, 58 F.2d 107 (7th Cir. 1932); Wood Bldg. Corp. v. Griffitts, 164 Cal.App.2d 559, 330 P. 2d 847 (2nd Dist. 1958); Modlin v. Walter's Fur Shop, 96 Cal.App.2d 734, 216 P.2d 42 (4th Dist. 1950); Harry's Cadillac-Pontiac Co. v. Norburn, 230 N.C. 23, 51 S.E.2d 916 (1949); Miller v. Ziedrich, 199 Or. 505, 263 P.2d 611 (1953); Baker Oil Tools, Inc. v. Chism, 70 Wyo. 461, 251 P.2d 569 (1952); Restatement (Second), Agency § 302 (1958). The Baker Oil Tools case in particular is enlightening, for the situation was strikingly similar to that in the instant case. Defendant hired a third party to "acidize" his oil well. The services were actually rendered by plaintiff. Afterwards, defendant refused to pay plaintiff on the grounds that he had never entered into a contract with plaintiff. The court held, however, that plaintiff was an undisclosed principal and the third party was its agent, and defendant had to pay.

There is a recognized exception to the rule as stated above. Where the third party relied on the agent's skill, character, or ability or the contract was for personal services, the third party is entitled to the performance for which he bargained. However, if the contract has been fully performed by the principal (as established in this case), the third party has no grounds for objection and must pay the principal. Sullivan v. Shailor, 70 Conn. 733, 40 A. 1054 (1898); Overton v. Harrison, 207 Ala. 590, 93 So. 564 (1922) (alternative holding).

4. It is conceded by appellants that the statute of limitations would prevent Bond from now bringing an action under the Miller Act. Appellants therefore cannot be subjected to a double liability through a claim by Bond as an individual.

5. As was said in Tucson Fed. Sav. & Loan Ass'n v. Aetna Inv. Corp., 74 Ariz. 163, 171, 245 P.2d 423, 428 (1952), "Where a contract has been executed in whole or in part, the courts look with disfavor upon a defense interposed by a corporation that its officers had no authority to execute it * * *." Appellants have received the services. They should pay for them.

persons, relying on Standard Oil Co. v. Moore.[6] This reliance is misplaced.

The *Moore* decision carefully pointed out the circumstances which in that case prevented the admission into evidence of records that did not come within the provisions of 28 U.S.C. § 1732(a) (1958).[7] The records in this case, however, are not subject to the same objections. The evidence in this case discloses that the time tickets were made up by Bond's truck drivers in the field as required by appellee. Here, the truck reports were on forms of the appellee entitled "Daily Truck Time Report" and showed in detail the dates when the trucks were furnished, the number of hours worked by each truck, the location and type of work done, and the truck driver's name; the daily tags also contained the signature of a Southern Industries employee. The scale weight sheets were made up by Bureau of Public Roads officials whose duties included making out these sheets and furnishing them to the truck drivers.

Appellants did not object to some of this documentary evidence but did object to a portion thereof. Appellants' brief does not point out to which portion appellants objected. However, an examination of the records contained in Exhibits 10 and 11 established that they were properly admissible under the business records rule.[8]

A reading of the entire record convinces us that there is substantial evidence to support the judgment and that no prejudicial error was committed.

Judgment affirmed.

6. 251 F.2d 188 (9th Cir. 1957), cert. denied, 356 U.S. 975, 78 S.Ct. 1139, 2 L. Ed.2d 1148 (1958).

7. "In any court of the United States and in any court established by Act of Congress, any writing or record, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence, or event, shall be admissible as evidence of such act, transaction, occurrence, or event, if made in regular course of any business, and if it was the regular course of such business to make such memoran-

dum or record at the time of such act, transaction, occurrence, or event or within a reasonable time thereafter.

"All other circumstances of the making of such writing or record, including lack of personal knowledge by the entrant or maker, may be shown to affect its weight, but such circumstances shall not affect its admissibility.

"The term 'business,' as used in this section, includes business, profession, occupation, and calling of every kind."

8. Standard Oil Co. v. Moore, 251 F.2d 188 (9th Cir. 1957).