STEPHENS, J.
 

 Defendant Poindexter was charged by information filed June 17, 1965 with a violation of Penal Code section 211 (robbery). Poindexter entered a plea of not guilty, waived right to trial by jury, and submitted upon the preliminary hearing transcript, subject to the production of further evidence by either side.
 

 Poindexter testified following the trial judge’s reading of the transcript. The court found the defendant guilty as charged. Probation report was ordered, and hearing thereon and hearing on motion for new trial were calendared for November 9, 1965; at this time also, the degree of robbery and time for sentence were set. On that day, motion for new trial was denied, degree of robbery was fixed at second degree and Poindexter referred to the Director of Department of Corrections, under section 1203.03 of the Penal Code, for 90-day observation, and the matter continued to November 23, 1965. Thereafter Poindexter was accepted for the observation under section 1203.03 and sent to the California Institute for Men, further matters being set for February 28,1966.
 

 Poindexter returned to court on February 15, 1966, at which time the section 1203.03 report was filed. Probation was denied, and sentence imposed to the state prison for the term prescribed, by law, with time theretofore spent in custody to be credited. On February 25, 1966, appeal from the judgment and from order denying motion for new trial was filed.
 

 The Facts
 

 A beer-bar fight occurred in the City of Los Angeles on May 20, 1965, with Poindexter one of the participants. Poindexter received facial cuts from a broken beer bottle used by another participant as an assault weapon. Poindexter struck Sandra Scott, the barmaid in charge of the place, and put her in fear of further harm. Poindexter took some $40 from the cash register, which was under the custody and control of the barmaid. The police arrived and placed Poindexter under arrest.
 

 The argument on appeal is that there is no evidence that the money taken was that of the barmaid. It is conceded that Poindexter both took the money and assaulted the barmaid. The evidence is clear that the barmaid had the custody
 
 *565
 
 and control of the money in the cash register. The facts establish that she had legal possession for the purposes of the robbery section.
 
 (People
 
 v.
 
 Downs,
 
 114 Cal.App.2d 758, 765-766 [251 P.2d 569];
 
 People
 
 v.
 
 Clark,
 
 70 Cal.App.2d 132 [160 P.2d 553].) There is evidence that at the time of the taking of the money, the barmaid did not intervene due to fear of further assault, and that Poindexter was equipped with a broken pool cue.
 

 “Robbery is the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear.” (Pen. Code, § 211.) Each element is here established.
 

 A more serious aspect of this ease, though not directly raised by Poindexter, is his suggested defense of believing his taking was only of that to which he had a lawful right. The testimony was that Poindexter, as he took the money, said something like: “ ‘You are lucky I don’t take it out on you,’ and the money that he took would pay for his doctor bill and his trouble.” Or, as Poindexter testified (referring to the conversation with the barmaid at the time of taking the money) : “Look, this is all your fault, you know that . . . Well, I got—somebody has got to pay for me going to this doctor, or, I got to go to a doctor, or something. ’ ’
 

 In a robbery case, the state has the burden of proving felonious intent, and that intent may be inferred when one takes the property from another by force or fear. The case of
 
 People
 
 v.
 
 Butler,
 
 65 Cal.2d 569 [55 Cal.Rptr. 511, 421 P.2d 703] acknowledges intent may be inferred, but indicates that the intent may be negated upon establishing that the accused had a good faith, though erroneous, belief that he had a right or claim to the property taken. However,
 
 Butler
 
 is not antagonistic to the conclusion we reach here. In the
 
 Butler
 
 case, it was the defense’s contention that the defendant sought the delivery of a sum certain coneededly due him. The trial court properly concluded that no evidence of premeditation or deliberation had been adduced by the prosecution. Instruction was given that since these elements were not present, it could find first degree murder only if defendant committed the killing in the perpetration of a robbery. The defense was that there was no intent to rob, but only to recover that which the defendant honestly believed was his. As the Supreme Court stated on page 574: “Since the jury returned a verdict of first degree murder, it believed defendant intended to take money from Anderson by force before the shooting occurred. Accord
 
 *566
 
 ingly, defendant’s only defense to robbery-murder was the existence of an honest belief that he was entitled to the money. ’ ’
 

 One element of robbery is taking from another that which belongs to the other, or that to which the other has a right of possession, as distinguished from that which is honestly believed to belong to the taker and is believed to be wrongfully in the possession of the other.
 
 (People
 
 v.
 
 Sheasbey,
 
 82 Cal.App. 459 [255 P. 836].)
 

 The argument of the prosecutor in
 
 Butler
 
 erroneously nullified the defense to which the defendant was entitled. That defense was the lack of intent to take that which was not his.
 

 The case before us was tried by the court without a jury, and the presumption is that the trial judge was aware of the defenses raised and that he considered them, whether argued or not. (4 Cal.Jur.2d, Appeal and Error, § 559.) The judge had the duty of weighing the evidence of the defense with that of the inference raised by the taking.
 
 (People
 
 v.
 
 Benford,
 
 53 Cal.2d 1, 5 [345 P.2d 928].) The testimony of defendant as to his intent in addition to that heretofore quoted was: “—All I knew is one thing. My face was bleeding and I felt like I needed some medical care. I guess this was one of the reasons why I took the money, so, I don’t know. ’ ’
 

 In the case before us, the trial court was not forced to conclude that defendant entertained a bona fide belief that he had a right to the money in the till, or any part of it. The facts are equally compatible with the conclusion that defendant intended to steal, and that his acts were coupled with the fabrication of a transparent excuse for doing so.
 

 Clearly, it is one thing to entertain a bona fide belief that the victim of a taking owes a sum certain to the taker, and quite another to help oneself to money in satisfaction of an unliquidated, questionable tort claim.
 
 [1]
 

 It is not necessary for us to determine just where the sometimes difficult line is to be drawn between a bona fide intent to recover a liquidated claim, and the mere self-help in the recompense of unliquidated damages. We are quite satisfied that
 
 *567
 
 a highly questionable claim to damages for personal injuries resulting from a barroom brawl is on the wrong side of the line.
 

 The judgment is affirmed, and the appeal from denial of motion for a new trial is dismissed.
 

 Kaus, P. J., and Hufstedler, J., concurred.
 

 [1]
 

 Note, 46 A.L.R.2d 1227 at 1235: “In a number of cases the courts have refused to extend the rule that the taking of money or property by force for the purpose of collecting a debt does not constitute robbery (see 2[a],
 
 supra),
 
 to a case where the forcible taking is for the purpose of collecting unliquidated damages.” (See also Supp. Note, 4 A.L.R. 2d, Later Case Service, p. 1162.)