589 P.2d 29

**The STATE of Arizona, Appellee,**
**v.**
**Dana Eugene LEWIS, Appellant.**

**No. 2 CA–CR 1383.**

Court of Appeals of Arizona,
Division 2.

Oct. 12, 1978.

Rehearing Denied Nov. 22, 1978.

Review Denied Dec. 12, 1978.

John A. LaSota, Jr., Atty. Gen., by William J. Schafer, III, and Diane M. Ramsey, Asst. Attys. Gen., Phoenix, for appellee.

John M. Neis, Pima County Public Defender, by Donald H. Bayles, Jr., Asst. Public Defender, Tucson, for appellant.

## OPINION

HOWARD, Judge.

Appellant was convicted by a jury of one count of armed robbery and two count of kidnapping for robbery. He was sentenced to a term of not less than ten nor more than fifteen years in the Arizona State Prison on the armed robbery conviction and to terms of not less than twenty nor more than twenty and one-half years in the Arizona State Prison for the kidnapping convictions. All sentences were to run concurrently.

He claims on appeal that the trial court erred when it (1) gave the court's instruction No. 15; (2) imposed a sentence of twenty to twenty and one-half years when it found that a minimal term under the armed robbery statute was appropriate; (3) conducted a presentence hearing outside the presence of appellant; and (4) allowed the state to call a rebuttal witness without notice to the defense.

The victims in this case, Brent Ferrin and Terry Rustin, testified that they met appellant at their apartment complex three days prior to the crimes. Appellant discussed the possibility of their purchasing a camera and pocket calculator so he brought the items to their apartment for them to inspect. The camera was, according to Ferrin, a $20 Vivitar and the calculator cost $10 to $15 new. A price of between $20 and $30 for both was discussed. At first the victims said they were going to buy the items, but later told appellant that they did not want to because they did not have enough money. They offered them back to appellant but he insisted that they keep them and pay him when they got the money. The victims again told appellant that

they did not want them even when appellant said he would take $5 or $10 for them. According to the victims appellant did not ask for return of these items.

The night before the crimes occurred, appellant went to the victims' apartment and told them that he had lost his keys and could not get into his apartment. He asked them if he could stay there and they reluctantly permitted him to sleep on the couch.

The next morning a visitor came to the apartment. Appellant told this visitor a false story in order to get him out of the apartment. He then went into the bedroom where the victims were standing, hit Ferrin on the head with a handgun and forced Ferrin and Rustin to lie on the floor. Appellant kept yelling that the victims were "jiving him" about his camera and calculator. He forced Ferrin to write him a check for $200 and then, at gunpoint had the victims drive him to a bank drive-in window where the check was cashed. Appellant took the money and had the victims drive him back to the apartment complex where appellant got out of the automobile and told the victims to keep driving. He also instructed them not to tell the police or either he or his brothers would "get" them.

The victims contacted the police who apprehended appellant at a friend's apartment in the complex. The police found the money in the bathtub. Appellant told the police in the presence of the victims, that he did not know them and denied any knowledge of the incident.

Appellant testified that the victims would not return the calculator and camera to him. When he found out that they intended to move, he asked them to give him $30 or $25 or his money. He stated that they had discussed a total price of between $75 or $100, but never did agree on a price for the items. He did not know how much they cost because his mother gave them to him but he had Ferrin write out the check for $200 because that was what they were worth to him. He stated that he told the police he did not know the victims because he was afraid.

Appellant's defense on the robbery charges was lack of animus furandi, intent to steal. In Arizona, a charge of robbery fails where the attempt is to collect a bona fide debt, since, to constitute that offense, there must be an animus furandi and this cannot exist if the person takes the property under a bona fide claim of right. *Bauer v. State*, 45 Ariz. 358, 43 P.2d 203 (1935); *State v. Harris*, 73 Ariz. 138, 238 P.2d 957 (1951); *State v. Hardin*, 99 Ariz. 56, 406 P.2d 406 (1965).[1] In the first two cases, the rule is mere dicta. Since we are bound by the decisions of our Supreme Court, *McKay v. Industrial Commission*, 103 Ariz. 191, 438 P.2d 757 (1968), we are constrained to follow the rule. We are not, however, precluded from criticizing it. In *State v. Ortiz*, 124 N.J.Super. 189, 305 A.2d 800 (1973), the court, in commenting on the majority rule, stated:

> "In our view, the proposition not only is lacking in sound reason and logic, but it is utterly incompatible with and has no place in an ordered and orderly society such as ours, which eschews self-help through violence. . . ." 305 A.2d at 802.

The court in *Ortiz* also points out that in those jurisdictions which have had occasion to examine the question as a matter of first impression since 1937, all have rejected the so-called majority rule, with the exception of a single federal case decided by a divided three-judge court.

We quote at length from the Wisconsin case of *Edwards v. State*, 49 Wis.2d 105, 181 N.W.2d 383, 387 (1970) because we believe this court has correctly analyzed the question of intent:

> "While it is true a person ought not be encouraged to take the law in his own hands to collect a debt by gun point or by intimidation, we do not think that is the issue. The question is what is the nature of the specific intent necessary to establish the crime of robbery. In this state by sec. 943.32, Stats., and at common law, the intent must be to steal. If a person seeks to repossess himself of specific

---

1. See Annot. 46 A.L.R.2d 1227; 77 A.L.R.3d 1363.

property which he owns and to which he has the present right of possession and the means he uses involves a gun or force, he might not have the intention to steal. While the reclamation of specific removable property at gun point by the owner may not be armed robbery, such self-help may and generally does constitute a lesser crime than robbery. Thus the deterrence of and punishment for such conduct required by public policy are satisfied. Therefore, we are not persuaded by the reasoning of the minority cases.

Neither can we accept the view of the majority cases which see no distinction between the reclaiming of one's own property by force and the taking of money by force from a debtor to repay a debt which is presently owing. We think the intent to steal is present when one at gun point or by force secures specific money which does not belong to him in order to apply it by such self-help to a debt owed to him. In sec. 943.32 robbery is defined as whoever, with intent to steal, takes property from the person or presence of the owner by either force or threat thereof with intent to overcome his physical resistance. Theft in sec. 943.20 is defined as the intentionally taking and carrying away movable property of another without his consent and with intent to deprive the owner permanently of possession of such property. Unless the accused can trace his ownership to specific coins and bills in the possession of the debtor, the debtor is the owner of the money in his pocket and it is theft to take it from his possession with intention to permanently deprive him of its possession regardless of what other motive or intention the accused has.

The distinction between specific personal property and money in general is important. A debtor can owe another $150 but the $150 in the debtor's pocket is not the specific property of the creditor. One has the intention to steal when he takes money from another's possession against the possessor's consent even though he also intends to apply the stolen money to a debt. The efficacy of self-help by force to enforce a bona fide claim for money does not negate the intent to commit robbery. Can one break into a bank and take money so long as he does not take more than the balance in his savings or checking account? Under the majority rule the accused must make change to be sure he collects no more than the amount he believes is due him on the debt. A debt is a relationship and in respect to money seldom finds itself embedded in specific coins and currency of the realm. Consequently, taking money from a debtor by force to pay a debt is robbery. The creditor has no such right of appropriation and allocation."

The Oregon court in *State v. Martin*, 15 Or.App. 498, 516 P.2d 753 (1974) also quoted from *Edwards v. State*, supra, but went one step further and held that a creditor's intent to collect a debt from his debtor by force in not a defense to a charge of robbery under any circumstances. Other recent cases which have not followed the majority rule are *People v. Uselding*, 107 Ill.App.2d 305, 247 N.E.2d 35 (1969); *People v. English*, 32 Ill.App.3d 691, 336 N.E.2d 199 (1975); *State v. Russell*, 217 Kan. 481, 536 P.2d 1392 (1975); *Williams v. State*, 317 So.2d 425 (Miss.1975); *Elliott v. State*, 2 Tenn.Cr.App. 418, 454 S.W.2d 187 (1970). Were we at liberty to do so, we would follow the rule in *Edwards v. State*, supra.

In some states which apparently follow the majority rule, an exception has been created where the amount claimed to be owed was of an unliquidated nature. These cases are cited in *State v. Austin*, 60 Wash.2d 227, 373 P.2d 137 (1962). There the trial court refused to give the following instruction:

" 'If you find from the evidence that defendant took property from the person of George Day in the honest belief that the property so taken was taken as a pledge for an indebtedness, you must return a verdict of Not Guilty.' "

The appellate court held that the trial court did not err in refusing to give the instruction, stating:

"However, the record is devoid of any testimony by the defendant that the as-

serted debt was of a liquidated nature. On the contrary, the defendant's testimony, read in its entirety, makes it clear that the amount claimed was uncertain. Therefore, the taking in the instant case, even if it was for the purpose of securing an honestly claimed indebtedness, will support a robbery conviction. . . . " 373 P.2d at 140.

California followed this rule in *People v. Poindexter*, 255 Cal.App.2d 566, 63 Cal.Rptr. 332 (1967), a case involving an alleged tort claim. The court noted:

"Clearly, it is one thing to entertain a bona-fide belief that the victim of a taking owes a sum certain to the taker, and quite another to help oneself to money in satisfaction of an unliquidated, questionable tort claim." 63 Cal.Rptr. at 334.

■ The testimony here clearly shows that the claim was unliquidated in nature. We therefore hold that the defense enunciated in *State v. Hardin*, supra, was not available to appellant. The instructions on the issue given by the trial court were therefore gratuitous and harmless.

■ The trial court, at appellant's request, held a pre-hearing conference pursuant to Rule 26.7 of the Arizona Rules of Criminal Procedure. This rule states:

"* * *

c. Pre-Hearing Conference. The court, on its own initiative or on motion of the parties, may hold a pre-hearing conference to ascertain and limit the matters in dispute or otherwise expedite the pre-sentencing hearing. The court may order the probation officer who prepared the presentence report to attend.

At such conference the court may postpone the date of sentencing for up to 10 days beyond the maximum extension permitted by Rule 26.3(b) and delay the presentencing hearing accordingly, in order to allow the probation officer to investigate any matter specified by the court, or to refer the defendant for mental health examinations or diagnostic tests. The court shall direct a minute entry noting all decisions, agreements and orders made at a pre-hearing conference."

Defense counsel did not request appellant's presence at this conference. Appellant now contends such absence constituted fundamental error. We do not agree. The purpose of the pre-sentence conference here was to discuss with the trial court a sentencing memorandum which appellant's counsel had filed with the court wherein he proposed a way to avoid the rule enunciated in *State v. Pakula*, 113 Ariz. 122, 547 P.2d 476 (1976) and *State v. Carter*, 116 Ariz. 595, 570 P.2d 763 (1977).[2]

Rule 19.2, Arizona Rules of Criminal Procedure, provides that the defendant has a right to be present at every stage of the trial, including the impaneling of the jury, the giving of additional instructions pursuant to Rule 22, and the return of a verdict. Rule 26.9, Arizona Rules of Criminal Procedure, states that the defendant is entitled to be present at a pre-sentencing hearing but it does not state that he is entitled to be present at the pre-hearing conference. We know of no case which holds it is a constitutional requirement that he be present at such conference. In fact, federal courts have held that a defendant has no right to be present at a pretrial conference in chambers. *Cox v. United States*, 309 F.2d 614 (8th Cir. 1962).

■ Appellant's counsel suggested in his presentence memorandum that the trial judge could avoid the rulings in *State v. Pakula*, supra, and *State v. Carter*, supra, and avoid the mandatory minimum sentences required on the kidnapping charges by granting appellant probation on the kidnapping charges, immediately or contemporaneously terminating the probation and then sentencing appellant to an appropriate term for the armed robbery. The trial judge refused to do so but stated that if he thought he could legally do what was suggested, he would. Although he thought appellant should go to prison, it was the court's opinion that he should only go there for the minimum required for a conviction

---

2. These cases stand for the proposition that a trial court cannot combine prison time with probation.

**160**

for armed robbery. Appellant now asks this court to adopt the scheme proposed in his sentencing memorandum. We decline to do so.

A.R.S. Sec. 13–1657(D) sets forth the circumstances under which a court may terminate probation:

"The court may at any time during the period of probation revoke or modify its order of suspension of imposition or execution of sentence. It may at any time, when the ends of justice will be subserved thereby, and when the good conduct and reform of the person so held on probation *warrants it*, terminate the period of probation and discharge the person so held . . . ." (Emphasis added)

Appellant's proposed sentencing plan is contrary to the foregoing statute. Any complaints about the harshness of *Pakula* and *Carter* should be directed to the legislature.

 Appellant moved for a mistrial based on the fact that a single juror saw him in the hallway during the recess wearing handcuffs. The court denied the motion. Appellant claims this was reversible error.

We do not agree. *State v. Sherron*, 105 Ariz. 277, 463 P.2d 533 (1970).

■ Over appellant's objection the trial court permitted the state to introduce in rebuttal the testimony of an expert witness who stated that the market value of the camera and calculator was $15 and $9.95, respectively. Appellant claims this was error in view of Rule 15.1(f), Arizona Rules of Criminal Procedure, which states:

"Upon receipt of the notice of defences required from the defendant under Rule 15.2(b) the state shall disclose the names and addresses of all persons whom the prosecutor will call as rebuttal witnesses together with their relevant written or recorded statements."

Appellant was given an opportunity to question the witness prior to the proffered testimony. Appellant's defense which he disclosed under Rule 15.2(b), Arizona Rules of Criminal Procedure, was lack of intent.

We cannot fault the prosecutor for failing to anticipate that the market value of the items would be at issue. There was no error. *State v. LaBarre*, 115 Ariz. 444, 565 P.2d 1305 (App. 1977).

Affirmed.

RICHMOND, C. J., and HATHAWAY, J., concur.