Filed 12/20/22  P. v. Wright CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C094246 |
| Plaintiff and Respondent, | (Super. Ct. No. 20FE002981) |
| v. | |
| ANTHONY GORDON WRIGHT, | |
| Defendant and Appellant. | |

A jury found defendant Anthony Gordon Wright guilty of second degree robbery, and after he waived his right to a jury trial on a prior conviction, the trial court found the prior conviction allegation to be true.  In addition to imposing an 11-year sentence, the trial court imposed a main jail booking fee and a classification fee.

On appeal, defendant challenges the robbery conviction for sufficiency of the evidence.  As to this, we affirm the judgment.

1

The People acknowledge as of July 1, 2021, the unpaid balance of fees imposed under Government Code section 29550.2 must be stricken, pursuant to Assembly Bill No. 1869 (2019-2020 Reg. Sess.). We shall vacate the main jail booking fee and main jail classification fee.

## FACTS AND HISTORY OF THE PROCEEDINGS

Defendant entered a bank wearing an "ARMY" t-shirt, black shorts, a black baseball cap, gloves, and sunglasses and gave a teller, M.N., a payment slip lacking account information which stated: "I'm here, give me what [*sic*] is all I got coming, I NEED all your money[,] thousands or what ever [*sic*] they give you. Don't have a lot [of] time N don't worry, I'm Anthony Wright."

As M.N. read the payment slip, defendant covered his mouth and muttered "give me the money." M.N. tried to dispense money from the recycler rather than the drawer as her training required, but because of her fear and shock, she could not get the code right to release the money. M.N. testified she was scared by the way defendant was standing; was unsure whether defendant had a weapon; and was afraid defendant would hurt her.

Defendant covered his mouth a second time and demanded money from M.N. Because she could not retrieve money from the recycler, M.N. unlocked the cash drawer and handed defendant $2,817. Defendant briefly turned to walk away, and as he did so, M.N. activated her silent alarm to alert the police. M.N.'s teller station did not have plexiglass separating her from defendant. Defendant turned back toward M.N., asked for more cash, and reached over the counter. M.N. testified she was afraid, she thought defendant might have a gun or knife, so she complied with defendant's cash demand. M.N. entered the correct code for the recycler and handed defendant an additional $1,000. M.N. feared she would die.

2

Before leaving the bank, defendant asked M.N. for her business card. M.N. offered to retrieve a card from her manager, but defendant declined to wait and said he would return the following day. M.N. testified she was afraid because she did not want defendant to return to the bank or have her personal information.

On his way out of the bank, defendant briefly spoke to the bank manager about calling a taxi. The bank manager offered to look up the phone number for a taxi, but defendant decided to leave rather than wait. As defendant left, M.N. testified she was scared and "couldn't react," and as a result, struggled to tell her coworker what had just happened. M.N. then called 911 and told the operator she began "freaking out" as soon as defendant gave her the payment slip. During the 911 call, M.N. also told the operator defendant cursed as he demanded more money.

Within 15 minutes of defendant's initial demand to M.N., officers arrived and saw defendant down the street from the bank. An officer held defendant at gunpoint and handcuffed him approximately a half mile from the bank, and as the officer did so, an envelope containing $3,817 nearly fell from defendant's pocket.

At trial, the court instructed the jury on the elements of robbery under CALCRIM No. 1600. The People argued defendant accomplished the robbery by fear. The jury found defendant guilty of second degree robbery under Penal Code section 211 (statutory section citations that follow are found in the Penal Code unless otherwise stated). Defendant waived his right to a jury trial on the prior conviction, and the trial court found the prior conviction true. The trial court sentenced defendant to the three-year middle term, doubled for a prior strike. The trial court also imposed a five-year consecutive term under section 667, subdivision (a)(1). The trial court sentenced defendant to an aggregate 11-year term in state prison.

The trial court pronounced the jail booking and classification fees but did not specify the amounts. As of June 8, 2021, defendant's abstract of judgment reflected a $90.65 classification fee and a $453.62 jail booking fee.

3

Defendant filed his notice of appeal on June 11, 2021.  Due to multiple granted extensions of time, this case was fully briefed on October 10, 2022, and assigned to this panel on October 14, 2022.

DISCUSSION

I

*Sufficiency of the Evidence to Prove Robbery*

Defendant claims the evidence was legally insufficient to prove the elements of fear and permanent deprivation.  We disagree.

Defendant also argues the evidence is legally insufficient to prove the force element of robbery.  Because the crime of robbery requires proof of either force or fear, as discussed below, we find sufficient evidence of fear.  The People were not required to prove force.

A.    Fear

"When reviewing a challenge to the sufficiency of the evidence, we ask ' "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." '  [Citation.]  Because the sufficiency of the evidence is ultimately a legal question, we must examine the record independently for ' "substantial evidence— that is, evidence which is reasonable, credible, and of solid value" ' that would support a finding beyond a reasonable doubt."  (*People v. Banks* (2015) 61 Cal.4th 788, 804.)  We presume in support of the judgment the existence of every fact that could reasonably be deduced from the evidence.  (*People v. Kraft* (2000) 23 Cal.4th 978, 1053.)

The trial court instructed the jury on the elements of robbery under CALCRIM No. 1600, which requires the People prove:  (1) defendant took property that was not his own; (2) the property was in the possession of another; (3) the property was taken from

4

the other person or their immediate presence; (4) the property was taken against that person's will; (5) defendant used force or fear to take the property; and (6) when defendant used force or fear, he intended to deprive the owner of the property permanently or remove the property from the owner's possession for an extended period of time that the owner would be deprived of a major portion of value of the property.

To establish that a robbery was committed by means of fear, the prosecution must present evidence the victim was in fact afraid, and that fear permitted the crime to be accomplished. (*People v. Montalvo* (2019) 36 Cal.App.5th 597, 612.) The victim's fear is subjective in nature and may be proven through the victim's direct testimony about her state of mind. (*Ibid.*; *People v. Morehead* (2011) 191 Cal.App.4th 765, 775.) Fear is sufficiently demonstrated if it facilitated the defendant's taking of the property. (*People v. Mullins* (2018) 19 Cal.App.5th 594, 604.) Any intimidation, even without threats, can be sufficient. (*Ibid.*) But, given the language of section 212, the intimidation must not merely produce fear, but rather, the fear of injury. (*Montalvo*, at p. 612.) A victim's attempt to activate an alarm during a bank robbery may also support an inference of fear. (*Morehead*, at p. 776.)

Defendant entered the bank wearing an "ARMY" t-shirt, black hat, gloves, and sunglasses and made multiple demands for money. At one point, he reached over the counter, cursed, and demanded additional money after M.N. had given him some. It was reasonable for jurors to infer she was intimidated by defendant's words and conduct which defendant concedes on appeal. Additionally, M.N. testified that throughout the incident, she was afraid defendant would hurt her if she did not comply with his demands. M.N. was so afraid of injury she could not properly operate the recycler and defied her training by giving defendant money from the cash drawer. She gave defendant the money because she was afraid he would hurt or kill her. In addition to her testimony, M.N. activated the silent alarm which also is evidence of her fear.

5

In sum, based on all the evidence, we conclude the jury reasonably could find defendant accomplished the robbery by means of fear, and M.N.'s fear was based on the infliction of injury.

B.    Permanent Deprivation

"Drawing on their ' "knowledge and beliefs about general matters of law and fact that find their source in everyday life and experience" ' [citations], reasonable jurors could infer" that by taking the money, defendant intended to permanently deprive the victim of their property.  (*People v. Morales* (1993) 19 Cal.App.4th 1383, 1391-1392; see also *People v. Poindexter* (1967) 255 Cal.App.2d 566, 568-569.)

Here, without a bank account, defendant made multiple demands for M.N. to give him money, including a written request that she "give [him] . . . all I got coming, I NEED all your money."  As we concluded above, defendant took $3,817 by causing M.N.'s fear of injury.  Relying on their everyday life experiences with the nature of money, reasonable jurors could infer that when defendant took M.N.'s money by fear, defendant's intention was to spend or otherwise use it; a permanent use.  Thus, given the evidence presented, jurors could reasonably conclude defendant intended to permanently deprive M.N. of her property.

We conclude there is sufficient evidence from which a reasonable juror could find beyond a reasonable doubt that defendant was guilty of second degree robbery.

II

*Assembly Bill No. 1869*

Assembly Bill No. 1869 repealed Government Code section 29550.2.  (Stats. 2020, ch. 92, § 25, eff. July 1, 2021.)  The bill also enacted Government Code section 6111, which provides:  "On and after July 1, 2021, the unpaid balance of any court-imposed costs pursuant to Section 27712, subdivision (c) or (f) of Section 29550, and Sections 29550.1, 29550.2, and 29550.3, as those sections read on June 30, 2021, is

6

unenforceable and uncollectible and any portion of a judgment imposing those costs shall be vacated." (Gov. Code, § 6111, subd. (a).)

At the sentencing hearing on June 8, 2021, the court orally pronounced jail booking and classification fees. Defendant's abstract of judgment reveals a $90.65 classification fee and $453.62 jail booking fee pursuant to Government Code section 29550.2. We shall vacate the unpaid balance for defendant's classification and jail booking fees.

## DISPOSITION

Defendant's main jail booking fee and classification fee are vacated. The trial court shall direct the clerk to prepare an amended abstract of judgment and forward a certified copy to the Department of Corrections and Rehabilitation. The judgment is otherwise affirmed.

_____
HULL, J.

We concur:

_____
ROBIE, Acting P. J.

_____
DUARTE, J.

7