ECKERSTROM, Chief Judge:
*994 ¶1 Patrick Dansdill appeals from his convictions and sentences for first-degree felony murder and attempted armed robbery. We reject his claims that he was vindictively prosecuted and that the state presented insufficient evidence to support the charge of attempted armed robbery. However, the prosecutor presented an improper argument during his summation, and the state has not proven that error was harmless beyond a reasonable doubt. We therefore reverse Dansdill's convictions and sentences and remand this case for a new trial.
Factual and Procedural Background
¶2 We view the facts in the light most favorable to upholding Dansdill's convictions and sentences. State v. Delgado , 232 Ariz. 182, ¶ 2, 303 P.3d 76 (App. 2013). In early 2014, Dansdill loaned $ 300 to M.L., his long-time friend and former girlfriend. By May 2014, M.L. had not repaid the debt and became aware that Dansdill was looking to collect the money.
¶3 In the early morning hours of May 17, M.L. was home with her boyfriend, R.G., and her cousin, M.G., who was visiting. All three were using drugs, including methamphetamine. They heard a loud knock on the door and both M.L. and R.G. asked who was there. The person at the door first responded in a joking manner that he was "Julio." Then Dansdill, who had left a downtown bar shortly before, identified himself by name and said, "[Y]ou guys owe me money." M.L., who recognized Dansdill's voice, corrected him, saying only she owed him the money. R.G. opened the door and quickly closed it. Dansdill warned, "I could make this easy or it could be a problem." Dansdill then asked R.G. to open the door, indicated he came "in peace," and said he would "put it away." But then a gun was fired through the door. The bullet hit R.G. in his arm and traveled into his chest. He died at the scene from the wound.
¶4 Shortly after the incident, the state charged Dansdill with second-degree murder. Almost a year later, the state obtained a second indictment charging Dansdill with two counts: (1) first-degree felony murder, "or in the alternative," second-degree murder; and (2) attempted armed robbery.
¶5 After a jury trial, Dansdill was found guilty of felony murder and attempted armed robbery. The trial court sentenced him to life in prison for the felony murder conviction and a concurrent term of 7.5 years for the attempted armed robbery conviction. After moving unsuccessfully for a new trial, Dansdill timely appealed. We have jurisdiction pursuant to A.R.S. §§ 12-120.21(A)(1), 13-4031, and 13-4033(A)(1).
Prosecutorial Vindictiveness
¶6 Dansdill first contends the trial court erred in denying his motion to dismiss for vindictive prosecution. In particular, Dansdill argues he made a prima facie showing that the first-degree felony murder charge in the second indictment raised a presumption of vindictiveness,[1] and that the state should have been required to justify its actions. Dansdill asks us to vacate his convictions and dismiss all charges with prejudice, including the original indictment.[2] "We review rulings on motions to dismiss for vindictive prosecution for an abuse of discretion." State v. Mieg , 225 Ariz. 445, ¶ 9, 239 P.3d 1258 (App. 2010).
¶7 "Prosecutorial vindictiveness," or governmental retaliation against a defendant for exercising a constitutional or statutory right, is a violation of due process. State v. Brun , 190 Ariz. 505, 506, 950 P.2d 164, 165 (App. 1997). Although it may be proven objectively where there is evidence of actual vindictive motivation, a defendant may instead "rely on a presumption of vindictiveness *995 if the circumstances establish a 'realistic likelihood of vindictiveness.' " Mieg , 225 Ariz. 445, ¶ 11, 239 P.3d 1258 (quoting Blackledge v. Perry , 417 U.S. 21, 27, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974) ). "If a defendant makes a prima facie showing that the charging decision is 'more likely than not attributable to vindictiveness' by the prosecutor, the burden shifts to the prosecutor to overcome the presumption 'by objective evidence justifying the prosecutor's action.' " Id. ¶ 12 (citation omitted) (first quoting Alabama v. Smith , 490 U.S. 794, 801, 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989), then quoting United States v. Goodwin , 457 U.S. 368, n.8, 102 S.Ct. 2485, 73 L.Ed.2d 74 (1982) ).
¶8 To make the requisite prima facie showing in the pretrial context, a defendant must do more than prove that the state increased charges after the defendant exercised a legal right. See Brun , 190 Ariz. at 507, 950 P.2d at 166 (quoting United States v. Meyer , 810 F.2d 1242, 1246 (D.C. Cir. 1987) ). Additional facts must also exist, id . at 507, 950 P.2d at 166, which, combined with the increased charges, "support a determination that the state's action is more likely than not explainable only as an effort to penalize [the] defendant for asserting his legal right[s]," Mieg , 225 Ariz. 445, ¶ 21, 239 P.3d 1258.
¶9 In this case, the state candidly explained on multiple occasions that it decided to obtain the second indictment in response to a defense theory that became apparent during pretrial interviews. In particular, the prosecutor stated that defense interviews had revealed "a theory or at least hints of a theory" that, although Dansdill had been at the door on the night of the incident, he was not the person who pulled the trigger. The prosecutor further explained that the way the case was initially charged "played to the strengths of that defense," so he made the strategic decision to obtain the felony murder indictment in order to eliminate the defense.[3]
¶10 Although criminal defendants have a due process right to develop their defenses, including by confronting witnesses and conducting pretrial interviews, due process does not prevent the state from responding strategically when a defendant's pretrial efforts reveal a defense the state did not anticipate. See Goodwin , 457 U.S. at 382, 102 S.Ct. 2485 ("A prosecutor should remain free before trial to exercise the broad discretion entrusted to him to determine the extent of the societal interest in prosecution. An initial decision should not freeze future conduct" because "the initial charges filed by a prosecutor may not reflect the extent to which an individual is legitimately subject to prosecution.").
¶11 Dansdill asks us to ignore the state's explanations, insisting they are "specious" because any third-party culpability defense that would apply to the original second-degree murder charge would apply equally to the attempted armed robbery and felony murder charges in the second indictment. But the question of the prosecutor's credibility regarding his motivation was one for the trial judge, not for this court. See, e.g. , State v. Estrada , 209 Ariz. 287, ¶ 2, 100 P.3d 452 (App. 2004). Furthermore, the supervening indictment relieved the state of its burden of showing that the shooter possessed the mens rea to commit second-degree murder, under circumstances that suggest the possibility of an unintentional shooting. For this reason, the new charges provided the state a tangible strategic advantage.
¶12 Dansdill insists the charging decision raised the presumption of vindictiveness because no new evidence or procedural developments justified the increased charges.
*996 This argument fails. The reason the United States Supreme Court has declined to adopt an "inflexible presumption of prosecutorial vindictiveness in a pretrial setting" is that, before trial, "the prosecutor's assessment of the proper extent of prosecution may not have crystallized." Goodwin , 457 U.S. at 381, 102 S.Ct. 2485. As the Court recognized, a prosecutor can legitimately re-charge a defendant in the pretrial context for various reasons, including when "[i]n the course of preparing a case for trial ... he simply ... come[s] to realize that information possessed by the State has a broader significance." Id. ; see also Meyer , 810 F.2d at 1246-47 (prosecutors "often make their initial charging decisions prior to gaining full ... appreciation of the facts involved in a given case" and "before analyzing thoroughly a case's legal complexities," and "further factual investigation or legal analysis" can be a legitimate reason to increase charges).
¶13 Here, relying primarily on Mieg , the trial court found that the second indictment was not "presumptively vindictive or ... facially vindictive given the circumstances of this case." It implicitly found that Dansdill had failed to show "a realistic likelihood" that the state added the charges of felony murder and attempted armed robbery "motivated solely by a desire to deter and punish" Dansdill for exercising his rights to defend himself, rather than a desire to "strengthen its case." Mieg , 225 Ariz. 445, ¶¶ 17-19, 239 P.3d 1258.
¶14 We expect that a defendant will formulate defenses through pre-trial investigation, and "[i]t is unrealistic to assume that a prosecutor's probable response" to such efforts-which are "an integral part of the adversary process in which our criminal justice system operates"-will be "to seek to penalize and to deter." Goodwin , 457 U.S. at 381, 102 S.Ct. 2485. In this case, Dansdill's position has been that defense interviews "completely changed the posture of the State's second-degree murder case." In that context, it was not an abuse of discretion for the trial court to accept the state's explanation that it had responded strategically to improve its chances of obtaining a conviction, not to penalize Dansdill or deter other defendants from aggressively defending themselves. See Brun , 190 Ariz. at 507, 950 P.2d at 166 (no presumption of vindictiveness because "unrealistic" to presume "routine assertion of procedural rights" prompted retaliation from the state).
¶15 Dansdill points to additional facts that he contends should have compelled the trial court to find a prima facie showing of vindictiveness. These include the state's failure to immediately dismiss the original second-degree murder indictment upon the issuance of the second indictment, the state's dismissal of the original indictment without prejudice after Dansdill raised the question of vindictive prosecution, and the prosecutor's attempt to proceed immediately to trial on the new first-degree murder charge using the date set for the initial second-degree murder charge. The trial court was best situated to determine whether these factors indicated vindictive motivation on the part of the prosecution or instead reflected a desire to bring the case to trial as expeditiously as possible.
¶16 Finally, Dansdill argues that, because the trial court repeatedly found that the increased charge "did have the appearance of vindictiveness to [Dansdill]," the court necessarily applied the wrong legal standard when finding no presumption of vindictiveness. We agree with the state that the court's mere acknowledgement of Dansdill's frustration does not reflect the application of an incorrect legal standard. Here, unlike in State v. Tsosie , the state's explanation for why it sought the increased charges provided an "objective indication that would allay a reasonable apprehension by the defendant that the more serious charge was vindictive." 171 Ariz. 683, 688, 832 P.2d 700, 705 (App. 1992).
¶17 For all these reasons, we find no abuse of discretion in the trial court's denial of Dansdill's motion to dismiss for vindictive prosecution.
Sufficiency of the Evidence
¶18 Dansdill next argues the state presented insufficient evidence to support his convictions for attempted armed robbery and felony murder with a predicate felony of attempted *997 armed robbery. Specifically, he maintains there was no evidence that he intended to take "any property of another" as required under the robbery statutes. He urges us to vacate his convictions with prejudice.
¶19 The "question of sufficiency of the evidence is one of law, subject to de novo review on appeal." State v. West , 226 Ariz. 559, ¶ 15, 250 P.3d 1188 (2011). We must decide whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. ¶ 16 (quoting State v. Mathers , 165 Ariz. 64, 66, 796 P.2d 866, 868 (1990) ). In making this determination, "we view the evidence in the light most favorable to sustaining the verdict, and we resolve all inferences against the defendant." State v. Davolt , 207 Ariz. 191, ¶ 87, 84 P.3d 456 (2004). We, like the trial court, "may not re-weigh the facts or disregard inferences that might reasonably be drawn from the evidence," and we may not find the evidence insufficient "when reasonable minds may differ." West , 226 Ariz. 559, ¶ 18, 250 P.3d 1188.
¶20 Dansdill maintains that, even according to the state's theory of the case, he attempted to use force only to regain $ 300 that M.L. indisputably owed him, which was not "property of another" as required for the commission of armed robbery as defined in A.R.S. §§ 13-1902(A) and 13-1904. His argument finds support in the reasoning of our supreme court that "a charge of robbery fails where the attempt is to collect a bona fide debt, since, to constitute that offense, there must be an animus furandi and this cannot exist if the person takes the property under a bona fide claim of right." Bauer v. State , 45 Ariz. 358, 363-64, 43 P.2d 203 (1935) ; see also State v. Hardin , 99 Ariz. 56, 59, 406 P.2d 406 (1965) (affirming Bauer 's dicta).
¶21 Since Bauer , however, our legislature revised the Arizona criminal code to reflect that "property of another" can include "property in which the defendant also has an interest." See A.R.S. § 13-1801(13) (revised 1978). Our supreme court "has not yet considered whether the claim of right defense as enunciated in Bauer v. State survived the enactment of [that portion of] the new criminal code." State v. Schaefer , 163 Ariz. 626, 629, 790 P.2d 281, 284 (App. 1990). And as Dansdill points out, this court has recognized the validity of the defense on multiple occasions since the 1978 revisions, without ever squarely addressing the statutory change. Most recently, in State v. Flores , we found it was appropriate for a trial court to instruct a jury as follows:
If a person takes property from another, even by force, the person does not commit robbery thereby if he entertains a good faith belief that he has a claim of right to the property taken. That is, if the defendant believes he has a legitimate claim of right to the property, however ill advised this claim of right may be, by taking the property, even by force, he does not commit the crime of robbery or armed robbery.
140 Ariz. 469, 473, 682 P.2d 1136, 1140 (App. 1984). See also State v. Bonser , 128 Ariz. 95, 96, 623 P.2d 1251, 1252 (App. 1981) (citing Bauer as providing "the rule in Arizona" so long as amount claimed is not in dispute); State v. Lewis , 121 Ariz. 155, 157, 589 P.2d 29, 31 (App. 1978) (criticizing but following Bauer rule).
¶22 The state contends the claim-of-right defense has been abrogated in full, citing Schaefer , in which the court reasoned that the defense "encourages disputants to resolve disputes on the streets through violence instead of through the judicial system." 163 Ariz. at 629, 790 P.2d 281. But that dicta overlooks that violent efforts to collect a debt or one's own property, even if not robbery due to a lack of requisite intent, would still be punishable as assault crimes. See Lewis , 121 Ariz. at 157-58, 589 P.2d at 31-32 (quoting Edwards v. State , 49 Wis.2d 105, 181 N.W.2d 383, 387 (1970) ).
¶23 Moreover, we can readily pose scenarios in which a defendant's interest in the property is so complete and apparent that an effort to recover it, even by force, would defy any characterization as robbery. For example, if a defendant witnessed a thief stealing his bicycle and immediately secured its return at gunpoint, the state could conceivably charge the defendant with aggravated assault.
*998 But the defendant most certainly would not have committed robbery under § 13-1902(A) (force must be used to secure "property of another").
¶24 We agree with the state, however, that the 1978 statutory change substantially narrowed the circumstances under which a defendant may assert such a claim-of-right defense to robbery. Section 13-1801(13) now defines "property of another" as "property in which any person other than the defendant has an interest on which the defendant is not privileged to infringe, including property in which the defendant also has an interest." In defining the scope of liability for a particular crime, we owe primary fidelity to the legislature's description of that crime. State v. Cheramie , 218 Ariz. 447, ¶ 9, 189 P.3d 374 (2008). For this reason, we adopt the logic set forth by our court in Lewis as more in conformity with the plain language of § 13-1801(13) : "Unless the accused can trace his ownership to specific coins and bills in the possession of the debtor, the debtor is the owner of the money in his pocket," and "the intent to steal is present when one at gun point or by force secures specific money which does not belong to him in order to apply it by such self-help to a debt owed to him." 121 Ariz. at 157-58, 589 P.2d at 31-32 (quoting Edwards , 181 N.W.2d at 387 ). We reject those decisions of our court that have implicitly held the state to a higher burden of showing "property of another" than that set forth in § 13-1801(13).
¶25 We must therefore determine whether the state presented evidence from which a reasonable juror could conclude that Dansdill was attempting to forcibly take property or money in which M.L. or another victim had an interest. By that standard, the state presented sufficient evidence to avoid a directed verdict on attempted armed robbery.
¶26 As the trial court found, the state presented evidence that Dansdill "pounded on the front door, demanded money of the victims, threatened them by stating that 'we can do this the easy way, or the hard way,' and ultimately shot the deceased victim through the closed door."[4] We agree that this evidence, particularly the threat[5] followed by the display of a deadly weapon, was sufficient to allow a rational trier of fact to conclude that Dansdill attempted to take money or property in which one or more of the victims had an interest by the threatened use of force and that he therefore attempted "robbery" at gunpoint within the meaning of the statute.[6]
Improper Argument
¶27 Dansdill also contends the state presented improper argument during two portions of its summation.[7] He contends these arguments, individually and cumulatively, denied him a fair trial and deprived him of due process of law. He argues the trial court erred in denying his motions for mistrial and for a new trial on this basis, and he urges us to reverse his convictions and remand for a new trial. "We review the denial of a motion for mistrial and a denial of a *999 motion for new trial for an abuse of discretion." State v. Mills , 196 Ariz. 269, ¶ 6, 995 P.2d 705 (App. 1999).
¶28 "We 'will reverse a conviction for prosecutorial misconduct if (1) misconduct is indeed present; and (2) a reasonable likelihood exists that the misconduct could have affected the jury's verdict, thereby denying [the] defendant a fair trial.' " State v. Gallardo , 225 Ariz. 560, ¶ 34, 242 P.3d 159 (2010) (alteration in Velazquez ) (quoting State v. Velazquez , 216 Ariz. 300, ¶ 45, 166 P.3d 91 (2007) ). "We separately 'evaluate each instance of alleged misconduct,' " and where a defendant objected at trial-as Dansdill did here-"we review for harmless error."[8] Id. ¶ 35 (quoting State v. Morris , 215 Ariz. 324, ¶ 47, 160 P.3d 203 (2007) ).
Were the Arguments Improper?
¶29 Although "[a]ttorneys, including prosecutors in criminal cases, are given wide latitude in their closing arguments," State v. Moody , 208 Ariz. 424, ¶ 154, 94 P.3d 1119 (2004) (quoting State v. Comer , 165 Ariz. 413, 426, 799 P.2d 333, 346 (1990) ), there are limitations. The jury is precluded from considering certain issues, and comments that call the jury's attention to those issues are improper. See State v. Williams , 169 Ariz. 376, 379-80, 819 P.2d 962, 965-66 (App. 1991) (citing State v. Hansen , 156 Ariz. 291, 296-97, 751 P.2d 951, 956-57 (1988) ).
¶30 We therefore first evaluate "whether the [challenged] remarks called to the jurors' attention matters that they should not consider." State v. Cropper , 223 Ariz. 522, ¶ 14, 225 P.3d 579 (2010) (quoting Morris , 215 Ariz. 324, ¶ 51, 160 P.3d 203 ). In so doing, we do not consider whether the prosecutor intended to call the jury's attention to forbidden matters or whether he was able, after the fact, to offer an arguably proper motivation for his comments. See State v. Ramos , 235 Ariz. 230, ¶ 14, 330 P.3d 987 (App. 2014) (finding statements improper irrespective of prosecutor's intent). Rather, we focus on whether reasonable jurors would understand the prosecutor's comments or gestures to be calling attention to matters not properly considered by the jury. See, e.g. , id. ¶ 13 (propriety depends on what jury would naturally perceive); State v. Still , 119 Ariz. 549, 551, 582 P.2d 639, 641 (1978) (reversing conviction based on what reasonable jury would conclude from prosecutor's comment and gesture). This is because "the touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor." Smith v. Phillips , 455 U.S. 209, 219, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982).
¶31 In evaluating the potential impact of a prosecutor's statements on a jury, we must be mindful that a prosecutor is the spokesperson for the state, an entity whose goal is to see justice done. For this reason, a prosecutor's remarks carry special prestige. See United States v. Phillips , 527 F.2d 1021, 1023 (7th Cir. 1975) (prosecutor's remarks "must be particularly scrutinized" as " 'great potential for jury persuasion ... arises because the prosecutor's personal status and his role as a spokesman for the government tend to give what he says the ring of authenticity' " (quoting Hall v. United States , 419 F.2d 582, 583-84 (5th Cir. 1969) )).
Felony Murder as "Lesser" or "Less Serious" Form of First-Degree Murder
¶32 During summation, the prosecutor referred to felony murder as the "less serious form of murder" and the "lesser form of first degree murder," as compared to "the more serious form of premeditated murder." After Dansdill objected and reserved his motion, the prosecutor again referred to "this lesser form of first degree murder, felony murder."
¶33 After the conclusion of the state's closing, Dansdill moved for a mistrial, arguing the prosecutor had incorrectly insinuated to the jury that the penalty for felony murder is less serious than for premeditated murder. The trial judge denied the motion, finding-based on what "[she] interpreted at the time"-that the prosecutor's statements were *1000 not a comment upon possible punishment but rather on the fact that the state was not required to prove intent.
¶34 Dansdill raised the claim again in his motion for a new trial, which the court denied. Emphasizing the prosecutor's after-the-fact explanation about what he had meant by his comments, the court ruled that "the State did not imply that the 'lesser form' of murder had a meaning other than the difference he described as to intent or premeditation," and that there had been "no implication about penalty."
¶35 In reaching this conclusion, the trial court abused its discretion. Rather than focusing on the prosecutor's post-hoc explanation of his intention or what the judge herself interpreted his intentions to be, the court should have examined the challenged comments from the perspective of how a reasonable jury would have understood them. A juror would reasonably understand a prosecutor's remarks about the comparative "seriousness" of an offense as a reference to the state's perception of its comparative gravity. And although jurors are instructed not to consider punishment, they are certainly aware that any verdict they return will have important consequences to a defendant, which will depend on the seriousness of the conviction. In this context, the prosecutor's repeated characterization of felony murder as a "lesser" or "less serious" form of murder than premeditated murder would have led a reasonable jury to infer that the potential consequences for felony murder would be less than those for premeditated murder. We therefore cannot agree with the trial court that the prosecutor's comments involved "no implication about penalty." We struggle to find any other way the jury could have reasonably understood them.[9]
¶36 That the terms "lesser" and "less serious" would be understood to refer to punishment also finds support in our jurisprudence. As our supreme court has explained, Arizona's homicide statutes "provide increased punishment for progressively more serious crimes." State v. Lua , 237 Ariz. 301, ¶ 9, 350 P.3d 805 (2015) (emphasis added). Indeed, one of the very purposes of the criminal code is "[t]o differentiate on reasonable grounds between serious and minor offenses and to prescribe proportionate penalties for each." A.R.S. § 13-101(4). Certain crimes are classified as "lesser-grade felon[ies]" due to a policy that those who commit them "deserve a lesser punishment" than those who commit their more serious counterparts. Lua , 237 Ariz. 301, ¶ 9, 350 P.3d 805.
¶37 The prosecutor's references to punishment were also inaccurate and misleading. Felony murder is not, in any meaningful respect, a "less serious" or "lesser" offense than premeditated murder. Rather, under Arizona law, they are "simply two forms of first-degree murder." State v. Tucker , 205 Ariz. 157, ¶ 50, 68 P.3d 110 (2003). Both offenses effectively carry the same potential punishments-life imprisonment or capital punishment-the most serious potential punishments found in our criminal code.[10]
*1001 ¶38 We acknowledge the prosecutor was entitled to argue that the state bore no burden to show Dansdill intended to kill. But the state has failed to explain how remarks about the comparative "seriousness" of premediated and felony murder were logically pertinent to making that point.[11]
¶39 In defending the propriety of his remarks to the trial court, the prosecutor maintained he gained no strategic benefit by characterizing felony murder as "less serious" than premeditated murder. The prosecutor's behavior during jury selection suggests otherwise: he chose to probe the venire on its willingness to convict a defendant of felony first-degree murder. In response, two potential jurors expressed confusion about the concept of felony murder. One of them concluded she could not convict a defendant of first-degree murder without a showing of intent to kill.[12] By insinuating that felony murder was a less serious charge because it required no showing of intent, the prosecutor effectively addressed any juror's concern about the fairness of decoupling "intent to kill" from criminal culpability for homicide.
¶40 We conclude that any reasonable jury would have understood the prosecutor's repeated characterization of felony murder as "less serious" than premeditated murder as a reference to the potential consequences of conviction. In the context of a criminal trial, those comments could mean little else. The trial court erred when it failed to sustain the defense objection to those remarks.
Reference to Dansdill's Decision Not to Testify
¶41 Dansdill chose not to testify at his trial. During summation, his counsel said the following regarding the state's evidence of calls from Dansdill's cellular telephone around the time of the incident:
Where is the information as to who these calls go to? Where are those witnesses? Where's the witness that could say, well, yeah, Dansdill called me at this time ...? Where's that information on these outgoing calls?
Where are any witnesses to say yeah, I got an outgoing call from Dansdill? Where is any of that information? Where did Dansdill say he was? Where is any of that information? There's none of that information.
¶42 In rebuttal, the prosecutor responded that, although "[t]here is never a point in the trial where the defendant has to present any evidence or put on any evidence," it is also the case that "[h]e can, he can present evidence." While saying this, the prosecutor angled his body and gestured with his right arm in the direction of the defense table. Dansdill objected and reserved his motion. After discussing other elements of the case, the state returned to the issue of the telephone calls:
[D]efense counsel says where are the witnesses who say who the defendant called? And I want to point in the direction of several different ... instructions here.
One is neither side is required to call all witnesses .... And the reason for that is because both parties are making choices about who they call and put on the stand. And each party is obligated to put the witnesses on the stand that prove their case. Or in the defendant's case, he's not *1002 obligated to do anything. But if he wants to argue to you about it ... if he wants to suggest it's in evidence, then he's got to put it on the witness stand.
... [A]nd, again, the burden is always on the State. Okay? ... It never shifts. But let me be perfectly clear. If any one of those people who-by the way, who was making the calls? Defendant. Who's making and receiving the calls? Defendant. So if any one of those people exonerated him, you could bet your bippy you would have been hearing about them from the witness stand.
And by the way, there's another instruction that says don't guess or speculate about items outside of evidence[.] ... So to stand up and say, well, think about these other people. Maybe they would help us. Well, then maybe we would have heard from them; right?
¶43 After the rebuttal, the court instructed the jury that "defendant's not actually required to produce evidence of any kind, and not producing evidence is not any evidence of guilt in itself as has been explained." Having reserved his objection, Dansdill's counsel moved again for a mistrial immediately after the jury was dismissed. The judge denied the motion.
¶44 Dansdill argues on appeal that the prosecutor's comments both improperly shifted the burden of proof to Dansdill and punished him for invoking his Fifth Amendment rights. We reject his first contention that the prosecutor's argument improperly shifted the burden of proof. As the trial court correctly found: "The prosecution was entitled ... to rebut defense counsel's closing arguments about missing evidence and witnesses and the quality of the proof."[13]
¶45 In response to Dansdill's Fifth Amendment claim, the state maintains that it made no comment on Dansdill's decision not to testify. Rather, it argues, its prosecutor exclusively addressed Dansdill's equal authority to call the witnesses in question, a proper topic of rebuttal. We agree that the majority of the prosecutor's comments addressed that proper topic.
¶46 However, one portion of those comments concerns us. The prosecutor repeatedly stressed that "Defendant" was the person who was "making the calls" and "receiving the calls" in question and would therefore know if those calls were exculpatory. The prosecutor then stated that, if any of the people on the other end of those calls could exonerate Dansdill, the jury "would have been hearing about them from the witness stand" (emphasis added).
¶47 The state contends this argument was designed only to emphasize that Dansdill stood in the best position to evaluate the evidentiary value of the potential witnesses. The prosecutor's preceding and subsequent remarks-which clearly focused on the capability of the defendant to subpoena such witnesses-do support that contention. For this reason, and in light of the trial court's superior position to personally assess the arguments and gestures in question, we conclude the trial court correctly found that these particular remarks would not alone justify granting the dramatic remedy of a mistrial. State v. Leteve , 237 Ariz. 516, ¶ 33, 354 P.3d 393 (2015) ("A declaration of a mistrial is the most dramatic remedy for trial error and should be granted only when it appears that justice will be thwarted unless the jury is discharged and a new trial granted." (quoting State v. Adamson , 136 Ariz. 250, 262, 665 P.2d 972, 984 (1983) )); see also State v. Jahns , 133 Ariz. 562, 567, 653 P.2d 19, 24 (App. 1982) (deferring to trial court's superior position to assess impact of counsel's arguments).
¶48 In so holding, we acknowledge that Arizona courts have been vigilant in scrutinizing prosecutorial comments that might direct the jury's attention to the defendant's *1003 failure to testify. Our supreme court has observed that "[t]he Fifth Amendment of the United States Constitution, Article 2, Section 10, of the Arizona Constitution, and A.R.S. section 13-117(B) prohibit any comment, direct or indirect, by a prosecutor about the failure of a defendant to testify." State v. Rutledge , 205 Ariz. 7, ¶ 26, 66 P.3d 50 (2003) (citing Griffin v. California , 380 U.S. 609, 615, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965) ). We have held that a comment need not be intentional to be unacceptable. See Ramos , 235 Ariz. 230, ¶ 14, 330 P.3d 987. Indeed, our supreme court has instead assessed such comments based on how they might be reasonably understood by the jury. State v. Parker , 231 Ariz. 391, ¶¶ 67-68, 296 P.3d 54 (2013) (argument improper if it "could also be interpreted" as comment on defendant's invocation of his Fifth Amendment rights). And, it has exhorted prosecutors to "refrain from venturing even close to commenting on a defendant's exercise of the significant rights protected by the Fifth Amendment." Id. ; see also State v. Bowie , 119 Ariz. 336, 341, 580 P.2d 1190, 1195 (1978) ("the state should scrupulously avoid any indication that the accused kept silent").
¶49 In applying those standards here, we recognize that a segment of the prosecutor's argument-in isolation-could have been understood as directing the jury's attention to the defendant's failure to testify. Although the prosecutor's broader argument clearly focused on observing that the defendant was equally entitled to call witnesses, a reasonable jury could have understood that Dansdill himself was among the witnesses the defense could have called to testify. The prosecutor repeated that "Defendant" either received or made the calls and that Dansdill therefore best knew the content of the calls. This argument suggested that Dansdill would be the best witness of all. Then, rather than carefully redirecting the jury from this improper potential inference, the prosecutor continued in a fashion that suggested he might be referring to Dansdill in his capacity as a witness: "So if any one of those people exonerated him, you could bet your bippy you would have been hearing about them from the witness stand." (Emphasis added.) As the prosecutor had implied in the prior sentence, only one witness could testify comprehensively about the topic in question: Dansdill himself.
¶50 However, we do not assess arguments in isolation. Here, defense counsel-not the prosecutor-first focused the jury's attention on a topic that might logically cause it to consider Dansdill's failure to testify. He argued in summation that the state had failed to call certain witnesses whose identities and probable testimony were obviously known best to Dansdill. Thus, to the extent the jury might have understood the prosecutor's rebuttal argument to imply that Dansdill himself was the best possible witness, the defendant's own argument had already exposed the jury to that inference. Further, to properly rebut the defendant's argument, the prosecutor had no choice but to address a topic that necessarily triggered such inferences. When the defense has forced a prosecutor onto such dangerous terrain, we decline to characterize an isolated linguistic misstep, in the context of an otherwise wholly proper argument, as error.
¶51 Although we find no error under the specific circumstances of this case, we do not approve of any arguments-even if intended for a proper purpose-that have the effect of calling a jury's attention to a defendant's decision not to testify. We exhort prosecutors to exhibit special care where fundamental rights are at play and when proper argument, as here, must necessarily skirt improper topics. See Parker , 231 Ariz. 391, ¶ 68, 296 P.3d 54 ; Bowie , 119 Ariz. at 341, 580 P.2d at 1195.
Was the Error Harmless Beyond a Reasonable Doubt?
¶52 Although we have concluded that the prosecutor argued improperly during summation when he repeatedly characterized felony murder as a "lesser" or "less serious" form of first-degree murder, we will nonetheless affirm Dansdill's convictions if the prosecutor's errors had no effect on the outcome of the case. State v. Bible , 175 Ariz. 549, 588, 858 P.2d 1152, 1191 (1993). When, as here, the defendant made timely objections to the errors, the state bears the burden *1004 of demonstrating their harmlessness. State v. Escalante , 245 Ariz. 135, ¶ 30, 425 P.3d 1078 (2018). "In deciding whether error is harmless, the question 'is not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in this trial was surely unattributable to the error.' " Leteve , 237 Ariz. 516, ¶ 25, 354 P.3d 393 (quoting Sullivan v. Louisiana , 508 U.S. 275, 279, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993) ).
¶53 As our supreme court has explained, it may be appropriate for misconduct to be found harmless in cases "where the evidence of guilt was overwhelming and the prosecutor's comment did not contribute to the verdict." State v. Rhodes , 110 Ariz. 237, 238, 517 P.2d 507, 508 (1973) ; see also State v. Trostle , 191 Ariz. 4, 16, 951 P.2d 869, 881 (1997) (improper comment harmless given "overwhelming evidence of guilt").
¶54 In this case, however, the evidence of attempted armed robbery was not overwhelming. The state's case relied primarily on the testimony of the two first-hand witnesses, M.L. and M.G. Both were intoxicated at the time of the incident. Both repeatedly refused to provide the state with the evidence it sought under oath.[14] One of them faced mandatory prison time on unrelated drug offenses and had been offered probation if she testified. Although ample evidence placed Dansdill at the scene of the crime with a gun, the only evidence of what Dansdill said-and thus the only evidence that he intended anything more than a poor joke among friends-was the testimony of these two problematic witnesses.
¶55 The state's lone evidence that Dansdill issued a threat to secure repayment of money was the recorded statement of M.L. to detectives on the night of the incident. Yet, M.L. testified at trial (as at her deposition) that she did not recall any threats. None of M.G.'s recorded statements, which were played for the jury, made any reference to a threat.
¶56 While we have concluded that a jury could reasonably have credited M.L.'s first statement to detectives-which suggested that Dansdill threatened the victims to collect a debt-the jury could also have questioned the sincerity of that threat in the context of the other testimony. Notably, the witnesses recalled that Dansdill initially behaved in a joking manner and made remarks suggesting he "came in peace" and intended to put the gun away. These remarks, together with Dansdill's historically close friendship with M.L., would have allowed a jury to reasonably conclude the gun was displayed as the foolish jest of an intoxicated defendant. According to the state, Dansdill fled the scene immediately after his gun discharged through the door, rather than staying to collect any money or even determine if anyone had been hurt. Thus, the evidence could have raised a reasonable doubt about whether Dansdill truly attempted to rob the victims at gunpoint. Indeed, during summation, the prosecutor himself acknowledged that one reasonable interpretation of the evidence was that Dansdill "startled himself because he didn't mean to fire that shot."
¶57 Given the ambiguity of the evidence presented, the questionable reliability of the only first-hand witnesses, and the state's burden to prove Dansdill guilty beyond a reasonable doubt, this was a close case on each of the indicted counts. For this reason, we are not "confident beyond a reasonable doubt" that the prosecutor's improper statements "had no influence on the jury's judgment" in this case, or that the verdict of guilt was "surely unattributable" to his misconduct. Leteve , 237 Ariz. 516, ¶ 25, 354 P.3d 393 *1005 (quoting Bible , 175 Ariz. at 588, 858 P.2d at 1191, and Sullivan , 508 U.S. at 279, 113 S.Ct. 2078 ).
¶58 We have sometimes concluded that prejudice from improper argument has been "cured by the trial court's instructions." Gallardo , 225 Ariz. 560, ¶ 40, 242 P.3d 159. Even a comment that is "irresponsible, inappropriate, and inflammatory" may not warrant reversal if, for instance, it "was an isolated comment, was promptly objected to, and was rendered less harmful by instructions by the court." Moody , 208 Ariz. 424, ¶ 152, 94 P.3d 1119. Our courts have frequently found misconduct harmless on appeal when the trial court sustained the defendant's objection, immediately instructed the jury to disregard improper comments, or provided further instruction to the jury prior to deliberations in order to dull the impact of the misconduct. E.g. , id. ¶ 151 ; see also Parker , 231 Ariz. 391, ¶ 68, 296 P.3d 54 (objection sustained and comment stricken); Velazquez , 216 Ariz. 300, ¶ 53, 166 P.3d 91 (after objection, jury instructed to disregard); Williams , 169 Ariz. at 380, 819 P.2d at 966 (objection sustained, evidence overwhelming); State v. Puffer , 110 Ariz. 180, 181, 516 P.2d 316, 317 (1973) (objection sustained, instructions provided).
¶59 The trial court took none of these steps here. It did not sustain Dansdill's objection to the state's characterization of felony murder as somehow "lesser" or "less serious" than premeditated first-degree murder. Thus, far from striking or disapproving those remarks, the court allowed the jury to consider them.[15] The court did remind the jury of the standard instruction that it should not "consider[ ] one way or the other what the punishment may or may not be." But, in light of the prosecutor's summation and the court's refusal to restrict or correct it, a reasonable jury might have been confused about whether, or how, arguments about punishment could be considered.
¶60 We may also consider the repetitive nature of the errors in evaluating the state's argument that the verdict was "surely unattributable" to those errors. As discussed above, the prosecutor's improper arguments about the "less serious" nature of felony murder were repeated and persisted after objection. That repetition not only renders it more likely that the jury gave the argument weight; it also suggests the prosecutor himself believed the improper argument was important rather than trivial to his case.
¶61 As previously noted, we must consider the impact of a prosecutor's remarks in their context. See Boyde v. California , 494 U.S. 370, 385, 110 S.Ct. 1190, 108 L.Ed.2d 316 (1990). The state characterized felony murder as a "lesser" and "less serious" form of murder after conceding it could not prove that the defendant even intended to fire the gun, much less that he intended to kill R.G. Those misleading comments had the effect of mollifying any jury concerns about clear weaknesses in the state's case, including whether Dansdill had been overcharged. Given the "alternative" charges in count one of the indictment before it, the jury in this case faced the unique task of distinguishing whether Dansdill committed second-degree murder, first-degree felony murder, or neither. In this context, the prosecutor's claim-that felony murder was "less serious" or a "lesser" offense because it did not require a showing of intent to kill-must have been especially confusing given that "intent to kill" is a necessary element of second-degree murder.
¶62 For all these reasons, this is not a case in which we "can say beyond a reasonable doubt that the error did not contribute to the verdict." State v. Guerra , 161 Ariz. 289, 297, 778 P.2d 1185, 1193 (1989). We must therefore reverse and remand for retrial.
Jury Instruction
¶63 Finally, Dansdill argues the trial court improperly instructed the jury in a manner that prevented proper consideration of the "alternative" second-degree murder charge in the first count of the second indictment. [16]
*1006 "We review de novo whether jury instructions correctly state the law, 'reading the jury instructions as a whole to ensure that the jury receives the information it needs to arrive at a legally correct decision.' " State v. Prince , 226 Ariz. 516, ¶ 77, 250 P.3d 1145 (2011) (citation omitted) (quoting State ex rel. Thomas v. Granville , 211 Ariz. 468, ¶ 8, 123 P.3d 662 (2005) ).
¶64 Dansdill is correct that the LeBlanc -style instruction provided to the jury was inappropriate in the context of alternative charges.[17] See State v. Petrak , 198 Ariz. 260, ¶ 28, 8 P.3d 1174 (App. 2000) (citing State v. Kelly , 149 Ariz. 115, 117, 716 P.2d 1052, 1054 (App. 1986) ) ("where two ... offenses are charged in the same count of an indictment," jurors should be instructed "that they must unanimously agree regarding which offense was committed or that the defendant committed both ... of the offenses"); see also Lua , 237 Ariz. 301, ¶¶ 19-20, 350 P.3d 805 (indicating LeBlanc -style instruction is inappropriate for offense that is not a lesser-included and providing instead instruction affirmatively directing jury to consider "whether the circumstance differentiating [the crimes] is present, thus justifying a finding of guilt on the less serious offense").[18] This error was compounded by the prosecutor's statement to the jury that the alternative count "means ... first you consider felony murder. And only if you don't all unanimously agree on felony murder, then do you proceed to second degree murder."
¶65 We take no position on the propriety of bringing two charges in the same count because the defendant made no challenge to the indictment on that basis. In the event this case proceeds to a new trial on remand and "alternative" charges are at issue, we direct the court to provide the correct instruction.
Disposition
¶66 For the foregoing reasons, Dansdill's convictions and sentences for felony murder and attempted armed robbery are reversed. We remand this case for further proceedings consistent with this opinion.

In his "Motion to Dismiss Due to a Presumption of Vindictiveness," Dansdill argued both actual bad faith retaliation and that the totality of the circumstances raised a presumption of vindictiveness, but he has abandoned his claim of actual vindictiveness on appeal.

"In the less preferable alternative," Dansdill asks us to vacate his convictions under the second indictment and remand for trial on the original indictment.

At trial, the prosecutor also indicated he returned to the grand jury to obtain the felony murder charge because he "wanted [Dansdill] to take a plea that was out at that time, and he wouldn't do it." Dansdill contends this statement was not true. Regardless, it is not improper for the state to threaten additional charges during plea negotiations and to follow through with such threats after a defendant decides not to plead. "[J]ust as a prosecutor may forgo legitimate charges already brought in an effort to save the time and expense of trial, a prosecutor may file additional charges if an initial expectation that a defendant would plead guilty to lesser charges proves unfounded." Goodwin , 457 U.S. at 380, 102 S.Ct. 2485. See also State v. Dominguez , 130 Ariz. 498, 498-99, 637 P.2d 300, 300-301 (App. 1981) ; Jeffers v. Lewis , 38 F.3d 411, 418 (9th Cir. 1994).

The trial court's formulation of the threat does not appear to be supported by the record. The recording of M.L.'s police interview that was played for the jury included her report that Dansdill said, "I could make this easy or it could be a problem." The prosecution used this formulation twice in its opening statement. However, its formulation of the threat changed during the parties' conversations with the judge regarding jury instructions and in closing arguments, and the court seems to have adopted this second, inaccurate formulation.

Although the differences in the formulations of the threat could be material in some contexts, either would be sufficient evidence of a qualifying threat in the context of a claim for insufficient evidence.

Notably, Dansdill was communicating with the victims through a closed door. Consequently, there was no way he could have seen specific money or property to which he claimed an exclusive interest. From this, the jury was entitled to infer that he did not merely seek the return of his own property.

Because a defendant need not show that a prosecutor intended to present an improper argument to be entitled to relief, we agree that Arizona courts' traditional reference to such claims as "prosecutorial misconduct" can be semantically misleading. Where possible, we therefore refer to them as "improper argument" claims. In so doing, we suggest no departure from the applicable law.

Where a defendant did not object below, "we review only for fundamental error," a significantly higher bar for a defendant to clear. Gallardo , 225 Ariz. 560, ¶ 35, 242 P.3d 159.

In its brief and at oral argument, the state suggested the prosecutor may have intended to convey that the "moral culpability" is "lesser" or "less serious" for felony murder than premeditated murder. Even if plausible, that would have directed the jury to the same improper and irrelevant basis for a verdict.

The prosecutor insisted, "Felony murder carries a different penalty" because it "carries a discretionary punishment of either life without the possibility of parole until 25 years are served or natural life." Our criminal code does appear to make a subtle distinction in sentencing between premeditated first-degree murder and felony first-degree murder when the crime has not been capitally charged: in the former context, the trial court "shall impose a sentence of natural life," whereas a felony murder conviction allows the court to "determine whether to impose a sentence of life or natural life." A.R.S. § 13-752(A) ; see also § 13-751(A)(3) (unlike natural life sentence, life sentence may allow for release after twenty-five years if victim was over fifteen). However, in Arizona, the possibility that a life sentence may allow for release after twenty-five years is more theoretical than practical. Parole was eliminated for all offenses committed after January 1, 1994, leaving commutation or pardon as the only possibilities for release. See A.R.S. § 41-1604.09(I) ; see also State v. Rosario , 195 Ariz. 264, ¶ 26, 987 P.2d 226 (App. 1999). The likelihood of either is so remote that the mandatory noncapital life sentence for felony murder is constitutionally indistinct from the mandatory noncapital natural life sentence for premeditated murder. See State v. Vera , 235 Ariz. 571, ¶ 17, 334 P.3d 754 (App. 2014).

Although the state argues that the prosecutor's references to the comparative "seriousness" of felony murder were-at most-inartful, inadvertent misstatements, we note that the statements were repeated, even after drawing an objection. Moreover, by the date of Dansdill's trial in early 2017, an appeal had already been filed and fully briefed in which another criminal defendant challenged similar statements made by this same prosecutor in a felony murder case. See State v. Urbina , No. 2 CA-CR 2016-0022, ¶ 39, 2017 WL 2664596 (Ariz. App. June 20, 2017) (mem. decision) (prosecutor's summation contrasted felony murder with premeditated murder, which he repeatedly characterized as "the more serious form of murder"). This suggests the remarks may have been a calculated strategy deployed by this prosecutor in felony murder cases.

In response to the prosecutor's description of the felony murder rule, the prospective juror said, "Doesn't make sense to me." The state then moved to strike her for cause. At sidebar, after attempting to clarify felony murder law in Arizona, the court asked the prospective juror whether she thought she could follow the law based on instructions from the bench. She responded, "I don't think I can. I don't think I can follow that when it applies to murder," and she was excused.

Dansdill contends his intention in his closing argument was to "challenge[ ] the State's proof that the calls had been made at all." However, it was reasonable for the state to respond to what it perceived as Dansdill's argument in closing regarding a lack of evidence, even if that perception was based on a misunderstanding of Dansdill's argument. See United States v. Robinson , 485 U.S. 25, 31, 108 S.Ct. 864, 99 L.Ed.2d 23 (1988) (accepting trial court's "reasonable interpretation" of defendant's ambiguous comments in summation despite defendant's insistence on appeal that interpretation was incorrect).

When she was deposed, and when she was later interviewed by detectives from the attorney general's office, M.L. said she could no longer remember what she had previously reported about the incident. At trial, M.L. testified that she did not hear Dansdill threaten R.G. in any way, that her best recollection of what Dansdill said was that he came in peace and would "put it away," and that she did not remember talking to the police about Dansdill saying, "I could make this easy or it could be a problem." For his part, M.G. refused to testify at the trial, saying, "I just don't feel I'm a credible witness. ... I don't recall anything that happened that night." Similarly, at his deposition-part of which was played for the jury-M.G. said he did not remember the incident and that he "was so high [he didn't] remember" what he had reported to the police the night it occurred.

Dansdill requested that the jury be instructed that premeditated murder and felony murder effectively carry the same penalty. No such corrective instruction was given. We do not address whether any such instruction would have been proper. We simply observe that the misleading features of the prosecutor's comments were never corrected.

Dansdill argues the alternative indictment was duplicitous but acknowledges he forfeited the error by failing to timely object.

Over Dansdill's repeated objection, the jury was instructed regarding the alternative second-degree murder charge as follows: "You may consider the offense of second-degree murder if either (1) You find the defendant not guilty of first-degree felony murder; or (2) After full and careful consideration of the facts, you cannot agree on whether to find the defendant guilty of first-degree felony murder." This is the instruction our supreme court has directed courts to use for lesser-included offenses. See State v. LeBlanc , 186 Ariz. 437, 439-40, 924 P.2d 441 (1996). And second-degree murder is not a lesser-included offense of felony murder. See State v. Murray , 184 Ariz. 9, 34, 906 P.2d 542 (1995).

As the court explained in Lua , one of the underlying rationales for requiring a different instruction for provocation manslaughter, which is not a lesser-included offense of second-degree murder, is "afford[ing juries] a less drastic alternative than the choice between convicting and acquitting on the second-degree murder charge, and ensur[ing] the defendant has the full benefit of the reasonable doubt standard." 237 Ariz. 301, ¶ 13, 350 P.3d 805.