NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

## DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

VALERIE FRANCIS VALDIVIA, *Appellant*.

No. 1 CA-CR 16-0867
No. 1 CA-CR 19-0168 PRPC
(Consolidated)
FILED 4-22-2021

Appeal and Petition for Review from the
Superior Court in Maricopa County
No.  CR2015-155321-001
The Honorable Colleen L. French, Judge *Pro Tempore* (Retired)

**VACATED AND REMANDED; DENYING PCR AS MOOT**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Michelle L. Hogan
*Counsel for Appellee*

Maricopa County Attorney's Office, Phoenix
By Adena J. Astrowsky
*Counsel for Appellee on the Petition for Review*

Maricopa County Public Defender's Office, Phoenix
By Lawrence S. Matthew
*Counsel for Appellant*

Debus & Kazan LTD., Phoenix
By Larry L. Debus, Gregory M. Zamora
*Counsel for Appellant on the Petition for Review*

---

## MEMORANDUM DECISION

Presiding Judge Michael J. Brown delivered the decision of the Court, in which Chief Judge Peter B. Swann and Judge Kent E. Cattani joined.

---

**B R O W N**, Judge:

¶1        Valerie Francis Valdivia appeals her conviction and sentence for forgery, claiming prosecutorial misconduct occurred at trial. She also challenges the denial of her petition for post-conviction relief. Because Valdivia has established fundamental, prejudicial error, we vacate her conviction and sentence.

## BACKGROUND

¶2        Valdivia entered a bank located inside a grocery store, asking that her check be cashed. Because Valdivia did not have an account with the bank, the manager asked to speak with her and took her identification. Valdivia told the manager that the payor, C.S., gave her the check for work she completed. Valdivia claimed to be in a hurry and appeared nervous. The manager noticed the signature on the check did not match the signature associated with the account and contacted C.S. to verify the transaction. When C.S. denied issuing the check, the manager went to a separate part of the bank and contacted police.

¶3        When police arrived, Valdivia was walking quickly toward an exit without the check or identification. Valdivia claimed she did not know the check was forged, telling police that an acquaintance named "Booty" asked her to cash it. Officers ran the nickname "Booty" through a database, pulled up a photo of a woman named Lauren Budoff, and Valdivia identified her as "Booty." Though Valdivia would later testify she planned to meet Budoff at a specified location and give her the cash, she failed to tell officers about the meet-up location, and instead told them she did not have Budoff's contact information. C.S. confirmed his checkbook had been stolen, he did not know either Valdivia or Budoff, and he did not issue the check.

¶4          Valdivia was indicted for committing forgery, a class 4 felony. In the State's initial notice of disclosure, Budoff was listed as a potential witness, along with her address. She was not called as a witness at trial, however, where the State presented the testimony of the bank manager, C.S., and two police officers. On cross-examination of Officer Ferrante, defense counsel asked the officer whether the name "Lauren Budoff [has any] significance to you." The State objected based on "self-serving hearsay[.]" Defense counsel argued the question did not involve hearsay; instead, he wanted to inquire whether Officer Ferrante conducted an investigation of Budoff. The State replied: "The only reason you have that name -- that name is in the police report . . . . It is not currently evidence in this trial." Following additional discussion, the court sustained the objection.

¶5          Valdivia testified that she ran into an acquaintance (Budoff) at an internet café. Budoff told Valdivia she started a new job but could not cash her paycheck because she lacked a valid ID. Budoff offered Valdivia $100 to cash the check. While presenting the check to the bank and being questioned by the manager, Valdivia said she did not know C.S. or how Budoff received the check, but she believed Budoff had recently started working for C.S. Valdivia further testified that when asked by police where the check came from, she explained she got it from "Lauren Budoff," who "goes by Booty." Valdivia testified that she confirmed the photo shown to her on the police laptop was Budoff.

¶6          During initial closing argument, the prosecutor stated that any claim Valdivia received the check from Budoff lacked credibility, but made no other references to Budoff. Defense counsel responded in part by asking the jury to consider why police did not investigate Budoff, asserting Valdivia told police officers at the outset where she obtained the check, but they did not "care to corroborate" her story. Defense counsel also emphasized that Valdivia did not write the check and it was the State's burden to investigate whether Budoff was involved. According to defense counsel, his client did a favor and "got burned by Lauren Budoff."

¶7          In rebuttal closing, the prosecutor repeatedly attacked Valdivia's credibility and asserted there was no Budoff (or "Booty"):

> The devil is in the details. When you delve a little deeper into [Valdivia's] story, when I asked further questions about this Booty, it fell apart.
>
>   . . .

[Valdivia] has no witnesses. There's no evidence to corroborate anything that she says.

. . .

All she knows is a nickname, Booty, so the police try to pull up who this person is. [The police] are following up on what she's telling them, and of course the first photo that they pull up, yeah, that's her, with nothing else to corroborate.

. . .

*Where is this Booty?* Where was she on December 4? . . . These are red flags about the credibility of this story, the red flags that this story doesn't make sense.

*There's no Booty*, and even if there's hypothetically someone who was also involved, your jury instructions say the absent participant, if someone else was also culpable, that doesn't necessarily take away from her guilt, her culpability, her actions and her choices that day.

. . .

If you are arrested for a crime, you don't lead the police directly to the person who is responsible? *Because there's no Booty. This person doesn't exist.*

. . .

The defendant . . . tried to shift the burden. She tried to pass the buck. She was pointing fingers saying this is not my fault, this is somebody else's fault, but when you ask questions, look at the details of this case, the details of her testimony yesterday, what she said, what was inconsistent, what she hadn't told the police, the evidence shows that this story doesn't make sense . . . . She knew the check was a forged check.

. . .

It is not reasonable to make excuses and to say that the defendant was duped. The defendant's story makes no sense. . . . There's no way the defendant did not know that that check was fraudulent. All the credible evidence in this case shows

> that she had to have known.  It is simply not reasonable to say
> that she had no idea.  It is not reasonable to blame and point
> the finger elsewhere, to blame Booty.  *There's no Booty.*

(Emphasis added.)  The jury found Valdivia guilty and the superior court sentenced her to a repetitive presumptive ten-year prison sentence. Valdivia appealed, and while the appeal was stayed, she sought post-conviction relief.  After an evidentiary hearing on Valdivia's ineffective assistance of counsel claim, the court denied relief.  This court granted Valdivia's request to consolidate her appeal and petition for review.

**DISCUSSION**

**¶8**　　　　Valdivia argues the prosecutor engaged in misconduct by falsely stating to the jury that Lauren Budoff (Booty) never existed.  She contends the statements were made in the face of the State's knowledge that Budoff *did* exist.  Valdivia emphasizes that the issue of whether Budoff existed was critical to her defense; she did not deny attempting to cash the check but claimed she did not have intent to defraud.  *See* A.R.S. § 13-2002 ("A person commits forgery if, with intent to defraud, the person . . . offers or presents . . . a forged instrument or one that contains false information.").

**¶9**　　　　To prevail on her claim of prosecutorial misconduct, Valdivia must prove the misconduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process."  *State v. Hughes*, 193 Ariz. 72, 79, ¶ 26 (1998) (citation omitted).  Because Valdivia did not raise this issue in the superior court, we review only for fundamental error.  *State v. Escalante*, 245 Ariz. 135, 140, ¶ 12 (2018); *see State v. Murray*, ___ Ariz. ___, No. CR-19-0368-PR, CR-20-0008-PR, 2021 WL 1035034, at *2, ¶ 11 (Ariz. Mar. 18, 2021) (clarifying that fundamental error is the proper standard for alleged prosecutorial misconduct that was not objected to at trial).  Valdivia bears the burden of establishing (1) trial error exists, (2) the error was fundamental, and (3) the error was prejudicial.  *Escalante*, 245 Ariz. at 142, ¶ 21.

### A.　　Trial Error

**¶10**　　　The first step in our review is determining whether trial error exists.  *Murray*, CR-19-0368-PR, at *4, ¶ 18.  Prosecutors have wide latitude in closing argument and may urge the jury to draw reasonable inferences from the evidence, *State v. Moody*, 208 Ariz. 424, 464, ¶ 180 (2004), but such inferences must be reasonably supported by the evidence, *State v. Acuna Valenzuela*, 245 Ariz. 197, 222, ¶ 109 (2018).

¶11    The prosecutor in this case plainly erred by falsely asserting to the jury that Budoff did not exist.  The State had disclosed Budoff as a potential witness and also filed a pretrial motion in limine seeking to preclude Valdivia from introducing at trial any of her exculpatory statements in which she had referenced Budoff.  Additionally, when Valdivia's counsel attempted to ask Officer Ferrante about Lauren Budoff, the prosecutor objected on the basis that references to Budoff were "self-serving hearsay."  The court sustained the objection, presumably because Valdivia had not yet testified, and absent her testimony, her previous statements referencing Budoff were properly viewed as hearsay.  But Valdivia subsequently testified at trial, and her references to Budoff were not inadmissible hearsay.  Nevertheless, the prosecutor made no effort to correct her earlier representation that any reference to Budoff was self-serving hearsay, and instead repeatedly asserted that Budoff did not exist.

¶12    Though the prosecutor was free to vigorously contend that Budoff was not involved in this case, the prosecutor could not specifically assert something she knew to be false and urge the jury to draw conclusions not reasonably supported by the evidence.  *See Hughes*, 193 Ariz. at 86, ¶ 61 (stating "the State has an obligation to be honest with the facts"); *see also United States v. Reyes*, 557 F.3d 1069, 1078 (9th Cir. 2009) ("We do not lightly tolerate a prosecutor asserting as a fact to the jury something known to be untrue . . . .").  Thus, the prosecutor's affirmative misrepresentations exceeded the bounds of permissible rebuttal argument.

¶13    The State contends the prosecutor's statements were a fair interpretation of the evidence, and the prosecutor was really saying that Budoff, *as Valdivia described her*, did not exist.  However, the prosecutor went well beyond asserting Valdivia was not credible or Budoff was not involved by stating, "there's no Booty.  This person doesn't exist."  No reasonable juror could interpret the prosecutor's comments as anything other than no such person existed.  Valdivia has met her first burden.

### B.    Fundamental Error

¶14    We next consider the totality of the circumstances to decide "whether the error is fundamental."  *Murray*, CR-19-0368-PR, at *4, ¶ 20 (citation omitted).  An error is fundamental if it "goes to the foundation of the case," including an error that "directly impacts a key factual dispute."  *Id*. at ¶¶ 20–21 (citation omitted).

¶15    Valdivia did not dispute she attempted to cash the check or claim that the check was properly signed.  Instead, she argued she was not

guilty because she did not have intent to defraud, having been misled by Budoff. In arguing Budoff did not exist, the prosecutor's misstatements impacted the major question to be resolved by the jury. The State had successfully excluded other evidence corroborating Budoff's existence, so whether the jury would believe Valdivia's defense came down to credibility determinations. Thus, the prosecutor's argument that Budoff did not exist significantly increased the chance the jury would not believe Valdivia's defense and would find her guilty, going to the foundation of her case. *Cf. Escalante*, 245 Ariz. at 143, ¶¶ 26–27 (holding that erroneous admission of drug-courier profile evidence was fundamental error going to the foundation of the case in part because it enhanced the likelihood that the jury would find against the defendant on a key factual dispute).

### C.    Prejudice

**¶16**        Finally, Valdivia must show the error was prejudicial. *Id*. at 142, ¶ 21. Establishing prejudice "varies depending on the nature of the error and the unique case facts." *Id*. at 144, ¶ 29. We "examine the entire record, including the parties' theories and arguments as well as the trial evidence." *Id*. at 144, ¶ 31. The key inquiry is whether "without the error, a reasonable jury could have plausibly and intelligently returned a different verdict." *Id*.; *see also Murray*, CR-19-0368-PR, at *6, ¶ 30.

**¶17**        The primary question before the jury was whether Valdivia intended to defraud the bank when she gave them a forged check, or whether she unknowingly handed over the check after being duped by Budoff. Thus, the fact of Budoff's existence was important evidence weighing on both Valdivia's defense and her credibility. The prosecutor's repeated theme during rebuttal closing that Booty did not exist was more than an isolated misstep. *See State v. Loos*, No. 1 CA-CR 18-0105, 2021 WL 1110909, at *5, ¶ 28 (Ariz. Ct. App. Mar. 23, 2021); s*ee also State v. Dansdill*, 246 Ariz. 593, 608, ¶ 60 (App. 2019) (noting that repetition of the improper argument likely meant the jury gave it more weight and suggested the prosecutor believed it was not trivial). Instead, comments made in rebuttal closing—that Budoff does not exist—were among the last statements the jurors heard before they began deliberations.

**¶18**        We therefore reject the State's contention that any prejudice to Valdivia was cured by the court's jury instructions addressing (1) judging credibility of witnesses, and (2) the principle that lawyers' arguments are not evidence. Although we presume jurors follow the instructions given to them, that presumption does not apply when a defendant has been deprived of a fair trial based on a prosecutor's false

statements that are likely to mislead the jury about a key factual dispute in the case. *Cf. Murray*, CR-19-0368-PR, at *8, ¶¶ 38–39. And the error was compounded by the fact that the prosecutor made the false statements in rebuttal closing. *See id.* at *8, ¶ 37 (noting the prosecutor's misstatement of the law was made in rebuttal argument, "when the words were most impactful").

¶19         Absent the prosecutor's improper comments, the jury could have plausibly returned a different verdict. Valdivia has therefore met her burden of establishing fundamental, prejudicial error based on prosecutorial misconduct that deprived her of a fair trial. *Murray*, CR-19-0368-PR, at *3, ¶ 13 (noting defendant's burden to establish prosecutorial misconduct, including deprivation of the right to a fair trial). Given this conclusion, we do not address Valdivia's other assertions of error or her request for review of the denial of her petition for post-conviction relief.

## CONCLUSION

¶20         We vacate Valdivia's conviction and sentence, remand for a new trial, and deny her petition for review from the denial of post-conviction relief as moot.



AMY M. WOOD • Clerk of the Court
FILED:    AA

8